**CITY OF EL PASO, Appellant,**

v.

**Willette L. KOLSTER, Appellee.**

**No. 08–95–00220–CV.**

Court of Appeals of Texas, El Paso.

Sept. 19, 1996.

Rehearing Overruled Oct. 16, 1996.

David C. Caylor, City Attorney, Daniel H. Hernandez, Assistant City Attorney, John Gates, Assistant City Attorney, El Paso, for Appellant.

Dudley R. Mann, El Paso, for appellee.

Before LARSEN, McCLURE and CHEW, JJ.

## *OPINION*

LARSEN, Justice.

The City of El Paso appeals a judgment, following jury trial, awarding plaintiff Willette Kolster $68,439.75. The City claims that it established, as a matter of law, its affirmative defense of sovereign immunity and that the trial court erred in not granting its motion for directed verdict, motion for judgment n.o.v., and motion for new trial based upon that defense. We reverse and render.

### *FACTS*

On February 7, 1991, Dawn Sloan was an Emergency Medical Service driver employed by the City of El Paso. En route to an emergency call around 5 p.m., she and her partner, Janet Perez, drove their ambulance to the corner of Zaragosa Road and Alameda Street, an intersection controlled by traffic lights. Their emergency lights and siren were operating. As they approached the intersection, they changed the pitch of their siren to "yelp" or "wail" mode, slowed, and stopped. The ambulance had the red light. Sloan, the driver, allowed several automobiles with the green light to clear the intersection, then believing all traffic had seen and heard the emergency vehicle, proceeded against the light. There was some evidence that at the moment Sloan entered the intersection, a call came over the ambulance radio asking for the unit's estimated time of arrival at the emergency site. Although Perez responded to the inquiry, this call may have momentarily diverted the driver's attention. There was also evidence that Sloan had a restriction on her driver's license at that time, requiring that she wear corrective lenses. She testified that this restriction resulted from a misunderstanding, however, that she needed glasses only for reading and other close vision, and that the restriction had been removed from her license when she next renewed her license and took an eye exam. It was uncontroverted that Sloan was not wearing corrective lenses at the time of this accident.

Plaintiff, Willette Kolster, driving with her windows up and radio on, neither heard the siren nor saw the ambulance and entered the intersection with the green light, striking the ambulance on its left front panel. Sloan testified that as they went to Ms. Kolster's aid after the collision, Kolster told them "I didn't see you." There was conflicting evidence as to whether obstructions existed which prevented Kolster from having a clear view of the intersection. Kolster was injured and her car was a total loss. She sued the City under the Texas Tort Claims Act.

After a lengthy trial,[1] a jury found the City 55 percent negligent in causing the accident and Kolster 45 percent negligent. The court entered judgment for plaintiff. In this appeal, the City urges that it was entitled to judgment because it proved, as a matter of law, compliance with the relevant statutory provisions requiring that an emergency vehicle driver exercise "due regard for the safety of all persons." The City claims that under these facts, plaintiff could not defeat its affirmative defense of sovereign immunity. We agree with the City.

### *STANDARD OF REVIEW*

The City urges that it was entitled to instructed verdict, judgment n.o.v., or new trial because it had established the affirmative defense of sovereign immunity as a matter of law. In reviewing these claims, we apply a legal sufficiency standard of review. *Henderson v. Travelers Ins. Co.*, 544 S.W.2d 649, 650 (Tex.1976). That is, we consider only the evidence and inferences that tend to support the jury's findings and disregard all evidence and inferences to the contrary. *Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278, 287 (Tex.1994); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). If there is more than a scintilla of evidence to support the questioned finding, the point fails. *U.S. Fire Ins. Co. v. Ramos*, 863 S.W.2d 534, 538

---

1. Needlessly prolonged, in this court's opinion, by the antagonism exhibited by counsel for both sides.

(Tex.App.—El Paso 1993, writ denied); *Worsham Steel Co. v. Arias,* 831 S.W.2d 81, 83 (Tex.App.—El Paso 1992, no writ); *Fuentes v. McFadden,* 825 S.W.2d 772, 775 (Tex.App.—El Paso 1992, no writ). Where the moving party relies upon an affirmative defense to establish entitlement to judgment as a matter of law, each element of that defense must be so conclusively established that reasonable minds could not differ as to the truth of its controlling facts. *Watts v. St. Mary's Hall,* 662 S.W.2d 55, 59 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). Thus, in order to obtain a reversal here, the City has the heavy burden of showing that plaintiff established no fact question regarding the ambulance driver's breach of her statutory duty to drive with due regard for the safety of all persons.

### Sovereign Immunity

■ The City of El Paso is a governmental unit generally immune from tort liability except where that immunity has been specifically waived by the legislature. The Texas legislature has waived such immunity in certain limited circumstances, including:

> (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>
> (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
>
> (B) the employee would be personally liable to the claimant according to Texas law.... TEX.CIV.PRAC. & REM.CODE ANN. § 101.021 (Vernon 1986).

A governmental unit specifically retains its immunity, however, in claims arising from:

> [T]he action of an employee while responding to an emergency call ... *if the action is in compliance with the laws and ordinances applicable to emergency action....* TEX.CIV.PRAC. & REM.CODE ANN. § 101.055(2) (Vernon 1986).

The law applicable to the ambulance driver here, who was responding to an emergency call and who was using all audible and visual signals (sirens and flashing lights) necessary to invoke the emergency provisions, is:

> (c) The driver of an authorized emergency vehicle may:
>
> .    .    .    .    .
>
> 2. Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;
>
> .    .    .    .    .
>
> (e) The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive *with due regard for the safety of all persons,* nor shall such provisions protect the driver from the consequences of his [sic] reckless disregard for the safety of others. TEX.REV.CIV.STAT. ANN. art. 6701d, § 24 (Vernon 1977) [emphasis added].

Relevant traffic regulations also provide:

> (a) Upon the immediate approach of an authorized emergency vehicle making use of audible and visual signals meeting the requirements of Section 124 of this Act, ...
>
> 1. The driver of every other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the roadway clear of any intersection and shall stop and remain in such position until the authorized emergency vehicle has passed....
>
> (b) This section shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with *due regard for the safety of all persons* using the highway. TEX.REV.CIV.STAT. ANN. art. 6701d, § 75 (Vernon 1977) [emphasis added].

There is no dispute that Dawn Sloan complied with state law requiring her to slow as necessary before entering an intersection against the red light. This, the City maintains, is sufficient to establish immunity as a matter of law. We disagree that our inquiry ends there. The applicable laws also required that Ms. Sloan exercise "due regard for the safety of all persons." Our inquiry,

therefore, is twofold: (1) what does "due regard for the safety of all persons" mean; and (2) does the record contain more than a scintilla of evidence that Ms. Sloan did not exercise such due regard upon entering the intersection of Alameda Street and Zaragosa Road.

### *Due regard*

■ Neither statute nor case law contains any definitive statement on the meaning of "due regard." A number of cases seem to equate the phrase with ordinary care, and indicate that lack of due regard is established under the common-law test for negligence. *See City of Amarillo v. Martin,* 912 S.W.2d 349, 353 (Tex.App.—Amarillo 1995, no writ) (opinion on motion for rehearing) ("careful analysis of recent cases implicitly examines due regard under an ordinary negligence standard of care.... we ... find no justification for ignoring the import of existing case law, which addresses due regard in terms of negligence"); *Guzman v. City of San Antonio,* 766 S.W.2d 858, 860 (Tex.App.—San Antonio 1989, no writ) ("City has not established, as a matter of law, that the Officer drove the patrol car with due regard for the safety of others. The City can be liable for the negligent acts of a police officer...."); *Travis v. City of Mesquite,* 764 S.W.2d 576, 580 (Tex.App.—Dallas 1989), *aff'd in part, rev'd in part,* 830 S.W.2d 94 (Tex.1992) (Thomas, J., dissenting) ("I conclude that the drivers of emergency vehicles owe a duty to exercise reasonable care to all who share the roadway with them."); *Eubanks v. Wood,* 304 S.W.2d 567, 570 (Tex.Civ.App.—Eastland 1957, writ ref'd n.r.e.) ("The jury found in effect that appellant failed to exercise reasonable care for the protection of others in using the streets....").

A contrasting view seems to interpret "due regard" as establishing a lesser duty than that of ordinary care. *See City of San Antonio v. Schneider,* 787 S.W.2d 459, 465 (Tex. App.—San Antonio 1990, writ denied) ("There is no precise statutory or case law definition for 'reckless disregard for the safety of others' and/or 'the duty to drive with due regard for the safety of all persons.' It appears that the breach of such duty lies between 'ordinary' and 'gross' negligence.");

*Presley v. City of Odessa,* 263 S.W.2d 293, 297 (Tex.Civ.App.—El Paso 1952, writ ref'd n.r.e.) (McGill, J., concurring) ("If the driver of an emergency vehicle is at all times required to drive with due regard for the safety of the public as all other drivers are required to do, then all the provisions of these statutes relating to emergency vehicles become meaningless and no privileges are granted to them.").

In deciding whether the City established due regard, and therefore sovereign immunity, as a matter of law, we must therefore first define whether "due regard for the safety of others" means the exercise of ordinary care, or something else. We conclude that "due regard" describes a standard between ordinary care and recklessness.

First, we are persuaded that to require emergency drivers to exercise the ordinary care required of drivers in other circumstances would strip the traffic code's emergency provisions of any meaning. The driver of an emergency vehicle has two concerns: the safety of the traveling public, certainly, but also the need to respond to urgent, sometimes life-and-death, calls as quickly as possible. Although the legislature has not relieved emergency drivers of the responsibility to exercise caution in answering an emergency call, we believe the law recognizes the importance of the vehicle's destination, as well.

■ Second, we conclude that if the legislature had intended emergency vehicle drivers to be held to the general standard of ordinary care, it could have easily used that phrase in drafting the statute. That it chose to use the phrase "due regard" instead indicates to us that something different was meant. Although this conclusion is attuned with that language that states an emergency vehicle operator will not be relieved of the consequences of recklessness, we do not agree with the City's assertion that lack of recklessness is all that it was required to show. The City claims that once it presented evidence of the ambulance operating with siren and flashing lights, and stopping before crossing the intersection against the red light, its sovereign immunity defense was

established as a matter of law. We believe, however, that there must be a two-step showing. First, the burden is on the City to show compliance with the traffic laws applicable to emergency actions, as was done here. Once that is established, however, the question of due regard (which we do not think is synonymous with stopping at the traffic light) remains. The burden of showing lack of due regard, then, is upon the plaintiff, and will usually be one for the finder of fact. In order to determine whether the City was entitled to a directed verdict, judgment n.o.v., or new trial, we must determine whether some evidence, more than a scintilla, supports a conclusion that the ambulance driver was not acting with due regard for the safety of others.

### Evidence showing lack of due regard

Evidence on this issue is not overwhelming. After reviewing the entire record, viewing what was presented in the light most favorable to the jury's verdict, we have gleaned the following evidence on lack of due regard: Ms. Sloan was not wearing corrective lenses at the time of this accident, although a restriction on her driver's license required that she do so. There was also uncontroverted evidence that this restriction was a mistake, and that she needed glasses only for reading and other close work.[2] As the ambulance approached the intersection of Zaragosa and Alameda, it came to a complete stop, then entered against the light at five to fifteen miles per hour. Just as it entered the intersection, the dispatcher called asking for the ambulance's ETA. The ambulance navigator responded to the inquiry, after the driver stated, "tell them about five minutes." It is the ambulance driver's duty to determine that the intersection is clear before proceeding against the red light. The ambulance driver never saw plaintiff's car until it was in the intersection.

We cannot conclude that this evidence amounts to more than a scintilla supporting the jury's conclusion that the City was 55 percent negligent in causing the accident in

question. We do not believe this amounts to legally sufficient evidence of lack of due regard (or lack of ordinary care, for that matter). There was simply no showing that the ambulance driver did anything but proceed with due regard in compliance with applicable laws. This court is always reluctant to overturn the decision of a jury, but here we are left with the strong conviction that there was simply no evidence to support their findings against the City.

### CONCLUSION

We conclude that "due regard for the safety of others" is an intermediate standard imposing a duty less than ordinary care but greater than a simple lack of recklessness. We also conclude that the evidence in this case raised no fact issue on the City's lack of due care which was in any way a causal factor in this accident. We therefore reverse and render judgment in favor of the City.

---

2. In a legal sufficiency review, the court may consider evidence which, although not favoring the verdict, was clearly established and uncontroverted. *Zamarron v. Adame,* 864 S.W.2d 173,

174 (Tex.App.—El Paso 1993, writ denied), *citing Commonwealth Lloyd's Ins. Co. v. Thomas,* 678 S.W.2d 278, 288 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.).