Robert ORDONEZ and Eloisa Ordonez, Individually and as Next Friends of Rebecca Ordonez, Rocky Ordonez, Juana Ordonez, and Genesis Ordonez, Minors, Appellants,

v.

M.W. McCURDY & CO., INC. and Arthur Lynn Johnson, Appellees.

No. 01–97–00180–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 13, 1998.

Published in Part Pursuant to Tex. R. App. P. 90.

---

Jeffrey Warren Hitt, Houston, for appellants.

Marcus R. Tucker, Houston, for appellees.

Before MIRABAL, WILSON and TAFT, JJ.

## OPINION

TAFT, Justice.

This appeal arises from an automobile accident in which appellants' van was struck from behind by appellees' truck. The trial court entered a take-nothing judgment after the jury found no negligence on the part of either driver. We address: (1) whether violation of the traffic statute prohibiting drivers from following other vehicles at an unsafe distance constitutes negligence per se; (2) whether darkness is a condition giving rise to the doctrine of unavoidable accident; (3) whether a company's disposal of log books documenting consecutive hours driven by a truck driver prior to his involvement in an accident, pursuant to a six-month company retention policy but after the receipt of a

notification letter stating that a claim would be filed, required the submission of an evidence spoliation instruction; and (4) whether the trial court abused its discretion by excluding portions of deposition testimony of appellants' liability expert. We affirm.

## Facts

Sometime between 5:00 and 6:00 a.m. on June 8, 1995, a truck driven by appellee Arthur Johnson, an employee of appellee M.W. McCurdy & Company,[1] collided with the rear end of a van driven by appellant Robert Ordonez.[2] Ordonez filed suit alleging the collision and resulting damages were caused by the negligence and negligence per se of Johnson. Ordonez further alleged that M.W. McCurdy & Company was vicariously liable for Johnson's conduct.[3]

The jury was presented with two conflicting versions of how the accident occurred. Ordonez introduced evidence that, at the time of the collision, he and his family were driving east on Interstate 10 at approximately 50 to 55 miles per hour, when they were suddenly struck from behind by Johnson's truck. McCurdy presented evidence that Johnson was driving east on Interstate 10 at approximately 50 to 55 miles per hour, when Ordonez's van suddenly pulled from the right shoulder directly into Johnson's path. Johnson said he was unable to see the dimly-lit van which he believed was traveling approximately five to 10 miles per hour on the shoulder, when it suddenly pulled onto the highway. Johnson swerved to the left and collided with the left rear of the van. Johnson also testified that, at the time of the accident, he was being closely followed by a truck and a car, neither of which were involved in the accident.

## Negligence Per Se

■ In his first point of error, Ordonez contends the trial court erred in directing a verdict on his negligence per se claims and in refusing to submit an instruction on that issue to the jury. In his pleadings, Ordonez alleged that Johnson had been negligent per se based on his failure to maintain an assured clear distance between the two vehicles as required by statute. At the close of Ordonez's case, McCurdy moved for a directed verdict on that claim, alleging that Ordonez failed to present any evidence supporting a finding of negligence per se. The trial court entered a directed verdict on Ordonez's negligence per se claims. At the charge conference, Ordonez requested an instruction on the negligence per se issue, which the trial court refused.

■ To survive a directed verdict, it is axiomatic that a party must state a theory of recovery recognized at law. *See Group Hosp. Servs. Inc. v. One & Two Brookriver Center,* 704 S.W.2d 886, 888–89 (Tex.App.—Dallas 1986, no writ) (holding that trial court properly granted directed verdict when plaintiff's allegations were insufficient to state cause of action under the DTPA). The trial court must submit jury instructions necessary to enable the jury to reach a verdict. TEX.R. CIV. P. 277; *S.H. v. National Convenience Stores, Inc.,* 936 S.W.2d 406, 408 (Tex. App.—Houston [1st Dist.] 1996, no writ). Whether or not to submit a jury instruction is left to the discretion of the trial court. *Mobil Chem. Co. v. Bell,* 517 S.W.2d 245, 256 (Tex.1974).

■ In his pleadings, Ordonez alleged that Johnson was negligent per se based on his violation of section 61(a) of article 6701d of the Texas Revised Civil Statutes. That statute provided as follows:

The driver of a motor vehicle shall, when following another vehicle, maintain an assured clear distance between the two vehicles, exercising due regard for the speed of such vehicles, traffic upon and conditions of the street or highway, so that such motor vehicle can be safely brought to a stop without colliding with the preceding vehicle, or veering into other vehicles, ob-

---

1. Appellees will be referred to collectively as "McCurdy."

2. Appellants will be referred to collectively as "Ordonez."

3. At trial, M.W. McCurdy & Company stipulated that Johnson was in the course and scope of his employment at the time of the collision.

jects or persons on or near the street or highway.

Act of June 10, 1969, 61st Leg., R.S., ch. 534, 1969 Tex. Gen. Laws 1671, 1671 (current version at TEX. TRANSP. CODE ANN. § 545.062(a) (Vernon Pamph.1998)). On appeal, Ordonez contends that, because a violation of section 61(a) constitutes negligence per se, and because some evidence exists that Johnson violated this statute by hitting the van from behind, the trial court erred in directing a verdict in favor of McCurdy and in failing to submit Ordonez's proposed instruction on section 61(a).[4] Negligence per se is a tort concept whereby a legislatively-imposed standard of conduct is adopted by the civil courts as defining the conduct of a reasonably prudent person. *Carter v. William Sommerville & Son, Inc.,* 584 S.W.2d 274, 278 (Tex.1979). An unexcused violation of a statute constitutes negligence per se if that statute was designed to prevent injury to the class of persons to which the injured plaintiff belongs. *El Chico Corp. v. Poole,* 732 S.W.2d 306, 312 (Tex.1987). When the legislature fixes a standard of reasonable care through the enactment of a statute, the trier of fact must determine only if the tortfeasor committed the act proscribed by the statute and if the act proximately caused injury. *Moughon v. Wolf,* 576 S.W.2d 603, 604–605 (Tex.1978).

■ In *Perry v. S.N,* the supreme court recently outlined several factors to be considered in determining whether it is appropriate to impose tort liability for violations of a particular statute.[5] 973 S.W.2d 301, 309 (Tex.1998) (op. on reh'g). Those factors include: (1) whether the statute is the sole source of any tort duty from the defendant to the plaintiff or merely supplies a standard of conduct for an existing common-law duty; (2) whether the statute puts the public on notice by clearly defining the required conduct; (3) whether the statute would impose liability without fault; (4) whether negligence per se would result in ruinous damages disproportionate to the seriousness of the statutory violation; and (5) whether the plaintiff's injury is a direct or indirect result of the violation of the statute. *Id.* The court noted these factors are not exclusive, and the determination of whether to impose negligence per se should not be made merely by counting how many factors lean each way. *Id.* at 305–06. Rather, the factors should act as guidelines to assist courts in determining the ultimate question of whether imposing tort liability for violations of a statute is fair, workable, and wise. *Id.*

■ Because the parties briefed this case prior to the supreme court's decision in *Perry,* their arguments did not address all of the factors listed by the court. However, McCurdy's primary argument on appeal is that the standard of conduct defined in section 61(a) is conditional in nature, and, therefore, the statute does not provide an absolute duty sufficient to support the application of negligence per se. This argument closely parallels one of the *Perry* factors, namely, whether the statute puts the public on notice by clearly defining the required conduct. *See Perry,* 973 S.W.2d at 309. Of all the considerations set forth in *Perry,* we believe this factor is the most relevant to the statute at issue in this case because a statute which defines a violation in conditional terms is less likely to support the application of negligence per se than one which provides an absolute, and thus more definite, standard of care. Accordingly, we must determine whether the standard of conduct found in section 61(a)

4. Ordonez's proposed instruction provided:
 The law forbids a driver of a motor vehicle to fail to maintain an assured clear distance between the two vehicles so that, considering the speed of the vehicles, traffic, and the conditions of the highway, the operator can safely stop without colliding with the preceding vehicle. A failure to comply with this law is negligence in itself.
 This instruction tracks the language of section 545.062(a) of the Transportation Code, which did not become effective until after the date of the accident in question. TEX TRANSP. CODE ANN.

§ 545.062(a). The current version and Ordonez's proposed instruction substitute the word "considering" for the former version's phrase "exercising due regard for." *See id.*

5. These factors are to be considered in addition to the threshold questions in every negligence per se case, namely, whether the plaintiff belongs to the class that the statute was intended to protect and whether the plaintiff's injury is of a type that the statute was designed to prevent. *Perry v. S.N.,* 973 S.W.2d 301, 304–05 (1998).

was defined with sufficient clarity to impose tort liability for a violation of that statute. *See Perry,* 973 S.W.2d at 309.

■ Although article 6701d, entitled "Uniform Act Regulating Traffic," does impose various duties upon those operating motor vehicles in this state, not every violation of article 6701d constitutes negligence as a matter of law. *Caughman v. Glaze,* 412 S.W.2d 357, 362 (Tex.Civ.App.—San Antonio 1967, writ ref'd n.r.e.). On a number of occasions, Texas courts have held that violations of particular sections found in article 6701d did not constitute negligence per se. These courts have held that, because a breach of these particular sections was conditioned upon proof that the defendant failed to act "safely," "with safety," or "prudently," these sections imposed upon the complainant the burden of proving that his opponent acted reasonably. *See Cudworth v. South Texas Paisano Constr. Co.,* 705 S.W.2d 315, 317 (Tex.App.—San Antonio 1986, writ ref'd n.r.e.) (holding that whether a driver operated his vehicle on an improved shoulder "in safety," as per section 54A, depends upon whether he acted reasonably under the common law); *Renfroe v. Ramsey,* 477 S.W.2d 648, 650 (Tex.Civ.App.—Houston [14th Dist.] 1972, no writ) (holding that whether a driver "safely" entered an intersection, as per section 71(c), depends upon whether he acted prudently); *Hemphill v. Meyers,* 469 S.W.2d 327, 328 (Tex.Civ.App.—Austin 1971, no writ) (holding that whether a driver yielded the right of way, as per section 74, depends upon whether he acted negligently or unreasonably). These courts have reasoned that, if a particular statute provides an absolute standard for determining civil liability, an unexcused violation of that statute constitutes negligence per se. *See, e.g., Cudworth,* 705 S.W.2d at 317; *Renfroe,* 477 S.W.2d at 650. If, on the other hand, the statute imposes a duty that is not absolute, but, rather, is conditioned upon a finding that the violator failed to act "safely" or "prudently," a violation of the statute does not constitute negligence per se. *Cudworth,* 705 S.W.2d at 317. For these statutes, the "reasonable person" standard of common-law negligence is read into the statute, thus requiring the jury to determine, as a matter of fact, whether the motorist acted as a reasonably prudent person would have under the same or similar circumstances. *See Waring v. Wommack,* 945 S.W.2d 889, 892 (Tex.App.—Austin 1997, no writ).

In *Borden, Inc. v. Price,* the Amarillo Court of Appeals recently followed this line of cases and held that a violation of section 61(a) does not constitute negligence per se. 939 S.W.2d 247, 251 (Tex.App.—Amarillo 1997, writ denied). The court recognized that the duty imposed by section 61(a) was not absolute, but was conditioned upon proof that the defendant failed to act "safely." *Id.* at 250–51. Therefore, the statute imposed upon the complainant the burden of proving that his opponent acted unreasonably as measured against the common law reasonably prudent man standard. *Id.* According to the Amarillo court "[I]f violation of the duty imposed by a statute is dependent upon a *jury* determining if the act was unreasonable or imprudent, then the statute cannot be one involving negligence per se." [6] *Id.* at 250.

Ordonez refers us to *Knighten v. Louisiana Pacific Corporation* for the proposition that a violation of section 61(a) does constitute negligence per se. 946 S.W.2d 638, 640–41 (Tex.App.—Beaumont 1997, pet. requested). In *Knighten,* the appellant alleged that the trial court erred in refusing to instruct the jury that a violation of section 61(a) constitutes negligence per se. *Knighten,* 946 S.W.2d at 641. Unlike the courts mentioned

---

**6.** In support of its position that 61(a) did not give rise to a claim for negligence per se, the *Borden* court cited its previous decision in *Schwab v. Stewart,* 387 S.W.2d 939, 942 (Tex.Civ.App.— Amarillo 1964), *writ ref'd n.r.e. per curiam,* 390 S.W.2d 752 (Tex.1965). Although not specifically addressing the absolute versus conditional duty distinction, the *Schwab* court did hold that a violation of section 61(a) did not constitute negligence per se, and that the "prudent man doctrine" should be applied. *Schwab,* 387 S.W.2d at 942. The *Schwab* court based its reasoning on an earlier Texas Supreme Court case which had held that a violation of section 86(d) of article 6701d did not constitute negligence per se, and that the reasonable prudent man standard should be applied. *Schwab,* 387 S.W.2d at 940 (citing *Missouri–Kansas–Texas R.R. Co. of Texas v. McFerrin,* 156 Tex. 69, 291 S.W.2d 931, 935–36 (1956)).

above, the Beaumont court did not address the absolute versus conditional duty distinction arising from the inclusion of the term "safely" in section 61(a). Instead, the court began its analysis with the conclusion that an unexcused violation of section 61(a) constitutes negligence per se.[7] From this premise, the court went on to distinguish *Smith v. Central Freight Lines, Inc.*, 774 S.W.2d 411, 415 (Tex.App.—Houston [14th Dist.] 1989, writ denied), upon which the appellees in *Knighten* relied. *Knighten*, 946 S.W.2d at 641. In *Smith*, without addressing the absolute versus conditional duty distinction, the Fourteenth Court of Appeals held that a requested negligence per se instruction on section 61(a) was properly denied by the trial court because the instruction merely restated the standard of ordinary care and, therefore, the trial court's submission of a broad form negligence question was proper. *Smith*, 774 S.W.2d at 415.[8] The *Knighten* court distinguished *Smith* by seizing on the absence of the term "using ordinary care," which appeared in the instruction at issue in *Smith. Knighten*, 946 S.W.2d at 641. The instruction at issue in *Knighten* tracked the language of section 61(a), and included the statutory language "exercising due regard." *Knighten*, 946 S.W.2d at 641. The *Knighten* court held that a standard of care requiring "due regard" imposes a duty less than "ordinary care," and, therefore, the instruction did not merely restate the duty that exists at common law. *Id.* (citing *City of El Paso v. Kolster*, 931 S.W.2d 365, 369 (Tex.App.—El Paso 1996) (holding that "due regard" describes a standard between ordinary care and recklessness), *rev'd on other grounds,*

972 S.W.2d 58, 59–60 (Tex.1998). The court concluded that the trial court should have instructed the jury that a violation of section 61(a) constitutes negligence per se. *Knighten*, 946 S.W.2d at 641.

■ Section 61(a) requires that the driver of a motor vehicle traveling behind another vehicle maintain an assured clear distance between the vehicles so that the driver's vehicle can be *safely* brought to a stop without colliding with the preceding vehicle. Act of June 10, 1969, 61st Leg., R.S., ch. 534, 1969 Tex. Gen. Laws 1671, 1671 (current version at TEX. TRANSP. CODE ANN. § 545.062(a) (Vernon Pamph.1998)). To comply with this mandate, the driver must exercise due regard for the speed of the vehicles and the traffic and conditions of the street or highway. *Id.* The statute does not require drivers to "exercise due regard" for the speed of the vehicles and the road conditions as a general rule. *See id.* Instead, the statute requires that drivers exercise the degree of "due regard" necessary to insure that the vehicle can be *safely* brought to a stop. *See id.* In *Knighten*, the court did not address the conditional nature of the statute arising from the phrase "so that such vehicle can be *safely* brought to a stop ...," and instead held that the phrase "exercising due regard" imposed a lesser standard of care than the common law and justified the submission of a negligence per se instruction. *See Knighten*, 946 S.W.2d at 641. The *Borden* court, faced with an instruction almost identical to that in *Knighten*, held that the term "safely" requires that the reasonable

---

7. The court cited *Kralik v. Martin*, 659 S.W.2d 136, 137 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.), in support of this proposition. *Knighten*, 946 S.W.2d . at 640–41. The *Kralik* court held that the trial court properly allowed the plaintiff to add claims of negligence per se to its pleadings post-trial because the court's findings, which, according to the court, were couched substantially in the language of sections 52, 60, and 61 of article 6701d, were sufficient to support a finding of negligence per se. *Kralik*, 659 S.W.2d at 137. However, the trial court's findings did not refer to any failure by the defendant to follow at a safe distance (section 61), but, rather, mentioned only that she had failed to operate her vehicle solely on the right half of the roadway (section 52) and that she unsafely operated her vehicle outside her lane of traffic (sec-

tion 60). *Kralik*, 659 S.W.2d at 137. The *Kralik* court did not observe any distinction between absolute and conditional duties in traffic offenses. If it had done so, the result would have been the same because one of the statutes allegedly violated, section 52, imposed an absolute duty justifying the addition of a negligence per se claim.

8. The instruction requested in *Smith* referred to "that distance which would be maintained by a driver *using ordinary care* when following another vehicle...." (Emphasis added.) The phrase "using ordinary care" does not exist in the version of section 61(a) applicable to this case, nor does it appear in Ordonez's proposed instruction.

man standard be applied, and did not address the effect, if any, of the phrase "exercising due regard." *See Borden*, 939 S.W.2d at 250–51.

■ The greater weight of Texas authority indicates that, when a statute such as section 61(a) is conditioned upon a finding that a motorist acted "safely," the duty imposed by the statute is not absolute and requires that the trier of fact determine whether the motorist acted as a reasonable person would have under the circumstances present at that time. *See Borden*, 939 S.W.2d at 251; *Renfroe*, 477 S.W.2d at 651 (noting that violation of statutory standards of conduct phrased in terms of "with safety" has been held not to constitute negligence per se). Because the conditional nature of these statutes requires the trier of fact to pass on the reasonableness of the actor, thus removing the statutes from the realm of negligence per se, it matters not whether they contain additional terms such as "due regard" which may, or may not, describe a standard of care different from the common-law duty of ordinary care. We choose to follow the lead of the Amarillo court and others which have recognized the absolute versus conditional duty distinction, and hold that a violation of section 61(a) does not constitute negligence per se. *See Borden*, 939 S.W.2d at 251. Therefore, the trial court did not err in directing a verdict on Ordonez's negligence per se claims nor in refusing to instruct the jury that a section 61(a) violation constitutes negligence per se.

We overrule Ordonez's first point of error.

**Unavoidable Accident Instruction**

■ In his second point of error, Ordonez contends that the trial court erred in submitting, over Ordonez's objection, the following instruction:

An occurrence may be an "unavoidable accident," that is, an event not proximately caused by the negligence of any party to it.

Ordonez contends that no evidence was presented that the collision was caused by any nonhuman environmental condition, and, in fact, the evidence showed that the collision was caused by either Johnson or Ordonez.

■ An unavoidable accident is a nonhuman event not proximately caused by the negligence of any party to it. *Reinhart v. Young*, 906 S.W.2d 471, 472 (Tex.1995); *Hill v. Winn Dixie Texas, Inc.*, 849 S.W.2d 802, 803 (Tex.1992). The only purpose of the instruction is to ensure that jurors will understand that they do not necessarily have to find that one or the other party to the suit was to blame for the occurrence. *Reinhart*, 906 S.W.2d at 472 (citing *Yarborough v. Berner*, 467 S.W.2d 188, 192 (Tex.1971)). The instruction is most often used to: (1) inquire about the causal effect of some physical or environmental condition or circumstance, such as fog, snow, sleet, wet or slick pavement, or obstruction of view; or (2) to resolve a case involving a very young child who is legally incapable of negligence. *Reinhart*, 906 S.W.2d at 472; *Hill*, 849 S.W.2d at 803. When there is no evidence that the accident was caused by some such peculiar circumstance, submission of the instruction is generally improper. *Hill*, 849 S.W.2d at 803. The supreme court has recently made it clear that "courts should refrain from submitting an unavoidable accident instruction ... due to the risk that the jury will be misled or confused by the perception that the instruction represents a separate issue distinct from general principles of negligence." *Reinhart*, 906 S.W.2d at 472; *Hill*, 849 S.W.2d at 803.

On appeal, McCurdy contends the instruction was proper based on evidence presented that it was dark when the accident occurred. Johnson testified it was dark and he did not see the dimly-lit van until moments before the accident. In addition, Ordonez testified the accident occurred between 5:00 and 6:00 a.m. Whether darkness is a physical or environmental condition that would justify the submission of an unavoidable accident instruction appears to be an issue of first impression. McCurdy argues darkness is an environmental factor similar to fog, snow, sleet, wet or slick pavement, or obstruction of view. McCurdy refers us to *Orange & N.W.R. Co. v. Harris*, which involved a motorist who was momentarily blinded by a low-hanging arc-light, maintained by the city, which caused him to collide with a railroad flatcar. 127 Tex. 13, 89 S.W.2d 973, 973–74

(1936). The supreme court held that, based on the hazard created by the arc-light, the trial court erred in failing to instruct the jury on the issue of unavoidable accident. *Id.* at 975.

■■■ We do not believe that darkness constitutes an environmental or physical condition justifying the submission of an unavoidable accident instruction. As noted by the supreme court, submission of an unavoidable accident instruction should be limited to "peculiar" circumstances, such as fog, snow, rain, and the like. *See Hill,* 849 S.W.2d at 803. These circumstances are usually extrinsic, uncontrollable events. *Hukill v. H.E.B. Food Stores, Inc.,* 756 S.W.2d 840, 844 (Tex. App.—Corpus Christi 1988, no writ). Darkness, while uncontrollable, is predictable and persistent. These characteristics differentiate it from "peculiar" circumstances, such as environmental conditions or physical obstructions, which may, on occasion, be found to proximately cause a particular injury and relieve litigants of liability. In light of the supreme court's recent decisions expressing reservations about the use of such instructions, we choose not to expand the doctrine of unavoidable accident as McCurdy suggests. *See Reinhart,* 906 S.W.2d at 473.

With the exception of its "darkness" argument, McCurdy does not refer us to, nor have we been able to locate, any evidence in the record supporting the submission of the unavoidable accident instruction. Accordingly, we hold that the trial court erred in so instructing the jury. *See Hill,* 849 S.W.2d at 803 (holding that trial court erred in instructing the jury on unavoidable accident when no evidence supported its submission).

■■■ Nevertheless, we conclude that the instruction does not, under the circumstances of this case, constitute reversible error. Er-

ror in the jury charge is reversible only if it probably caused the rendition of an improper judgment. TEX.R.APP. P. 44.1. In *Reinhart,* the supreme court, after finding the trial court erred in submitting the instruction, held that its submission did not constitute reversible error because (1) the defendant introduced ample evidence at trial to support the jury's failure to find him negligent, (2) the charge contained an instruction concerning the doctrine of sudden emergency, which reiterated much of the unavoidable accident instruction, and (3) unavoidable accident was not mentioned by any of the witnesses, and the defendant's attorney made little mention of it in his closing argument. 906 S.W.2d at 474.

We find nothing in the record before us today to suggest a result different than that reached in *Reinhart.* First, McCurdy introduced ample evidence at trial to support the jury's finding that Johnson was not negligent. Second, the jury charge contained an instruction on the doctrine of sudden emergency, which reiterated much of the unavoidable accident instruction.[9] Third, nothing suggests that the jury in any way based its verdict on the unavoidable accident instruction. To the contrary, a note sent to the trial judge by the jury asked whether the jury could find neither driver at fault if the evidence did not "preponderantly support" the negligence of either party. As in *Reinhart,* McCurdy's counsel did not mention the unavoidable accident instruction in his final argument.

Accordingly, we overrule Ordonez's second point of error.

## Spoliation Instruction

■■■ In his fourth point of error, Ordonez contends the trial court erred in refusing his instruction on spoliation of evidence.[10] Ac-

9. The sudden emergency instruction provided as follows:

When a person is confronted by an "emergency" arising suddenly and unexpectedly, which was not proximately caused by any negligence on his part and which, to a reasonable person, requires immediate action without time for deliberation, his conduct in such an emergency is not negligence or failure to use ordinary care if, after such emergency arises, he acts as a person of

ordinary prudence would have acted under the same or similar circumstances.

10. Ordonez's proposed instruction provided as follows:

You are instructed that if there is evidence that is pertinent to the issues in this cause, which was in the exclusive possession and control of a party and which cannot be produced, and its disappearance or non-production has not been satis-

cording to Ordonez, one of his theories in this case was that Johnson caused the accident because he was fatigued from his long drive. Ordonez contends that, because he presented some evidence showing that McCurdy intentionally destroyed Johnson's driver's log reflecting his off-duty and on-duty hours, the trial court was required to submit Ordonez's proposed instruction. As previously stated, whether or not to submit a jury instruction is left to the discretion of the trial court. *Bell,* 517 S.W.2d at 256. Any error in failing to instruct is reversible only if it probably caused the rendition of an improper judgment. TEX.R.APP. P. 44.1.

 Intentional spoliation of evidence relevant to a case raises a presumption that the evidence would have been unfavorable to the cause of the spoliator. *Brewer v. Dowling,* 862 S.W.2d 156, 159 (Tex.App.—Fort Worth 1993, writ denied); *H.E. Butt Grocery Co. v. Bruner,* 530 S.W.2d 340, 344 (Tex.Civ. App.—Waco 1975, writ dism'd). However, the alleged spoliator may rebut the presumption by showing that the evidence in question was not destroyed with fraudulent intent or purpose. *See H.E. Butt Grocery Co.,* 530 S.W.2d at 344 (noting that defendant did not rebut presumption that arose after defendant's employees intentionally and deliberately destroyed evidence so that it would not be available to the plaintiff).[11]

According to the testimony of McCurdy's corporate representative, Glenn Franklin, McCurdy's drivers were required to keep log books documenting hours driven and off-duty time, as mandated by federal regulations. Franklin testified that those logs are kept for only six months, and are then thrown away.

In support of his contention that McCurdy intentionally destroyed the log book, thus giving rise to the intentional spoliation presumption, Ordonez refers us to the following excerpts from Franklin's testimony:

Q: Let me ask you this: Do you know if you kept Arthur Johnson's driving log for the trip in which the wreck occurred that we're here today about?

A: No, we do not have them. They were thrown away.

. . . .

Q: It's my understanding that the wreck that we're here today about occurred on June 8th, 1995. Does that sound right to you?

A: Yes, I believe that's correct.

Q: Did y'all not get a notice letter on June 12th, 1995, four days after the wreck, that the Ordonez family was going to be making a claim related to that wreck?[12]

A: That's possible.

Q: And even though you got that notice, it's your testimony today that the driving log which would have documented Arthur Johnson's driving—times of driving and the period of time he was driving on the trip in question, those are gone?

A: Yes, sir.

Although Ordonez contends this testimony constitutes unequivocal evidence that McCurdy intentionally destroyed the log book, Franklin merely testified the log book was "thrown away" and that it was "possible" that McCurdy received a notice letter from Ordonez soon after the accident. When this

---

factorily explained, then you may consider that such evidence contained information adverse to the position taken by the party who was in possession.

**11.** Two general rules apply to presumptions that arise from the nonproduction of evidence. In addition to the presumption that arises from the intentional destruction of evidence, a second general rule states that failure to produce evidence within a party's control raises the presumption that if produced it would operate against him, and every intendment will be in favor of the opposite party. *Brewer v. Dowling,* 862 S.W.2d 156, 159 (Tex.App.—Fort Worth 1993, writ denied). This second rule comes into play only

when one party has introduced evidence harmful to its opponent. *Id.* Under such circumstances, the failure of the opposing party to rebut the harmful evidence with evidence within its control raises a presumption that the unpresented evidence would also be unfavorable to the nonproducing party. *Id.* However, because Ordonez argues only that the trial court erred in not submitting his spoliation instruction because McCurdy *intentionally* destroyed the log book, we will address only the first of the two general rules.

**12.** We note that the record does not contain a copy of this letter, and no witness testified that such a letter was actually sent to McCurdy.

testimony is considered with Franklin's earlier testimony that all log books are routinely disposed of after six months, the evidence shows only that the log books were thrown away pursuant to McCurdy's normal business practice of keeping such logs for only six months. There is no evidence that the log books were destroyed for the purpose of concealing them from Ordonez. We hold that the trial court did not abuse its discretion in refusing Ordonez's spoliation instruction.[13]

We overrule Ordonez's fourth point of error.

The discussion of the remaining point of error does not meet the criteria for publication, TEX.R.APP. P. 47.4, and is thus ordered not published.

We affirm the trial court's judgment.

13. Even if Ordonez had argued that the second of the general spoliation rules applied to this case, the presumption would not have arisen because he did not provide any evidence that the log book contained information harmful to McCurdy. Franklin testified that, during the time in question, Johnson's log book complied with the federal regulations requiring that an individual not drive over 10 hours without taking an eight-hour break. Johnson confirmed Franklin's testimony by describing the locations and times of rest stops he made during his trip from the west coast to Houston.