Rafael URISTA, Appellant,

v.

BED, BATH, & BEYOND, INC., Appellee.

No. 01–02–00150–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 19, 2004.

Jonathan Scott Stoger, Thomas N. Thurlow, Thurlow & Associates, for appellant.

Evelyn Ailts Derrington, Neal David Kieval, Michael Phillips, Phillips & Akers, P.C., Jonathan Christopher Kieschnick, Houston, for appellee.

Panel consists of Justices JENNINGS, ALCALA, and HEDGES.*

## OPINION ON MOTION FOR REHEARING

ELSA ALCALA, Justice.

Appellee, Bed, Bath, and Beyond, Inc. (BBB), has filed a motion for rehearing of our opinion issued on June 12, 2003. We granted rehearing, appellant Rafael Urista filed a response, as requested, and this case was resubmitted for rehearing on January 13, 2004. We withdraw our opinion of June 12, 2003, and issue this opinion in its stead and vacate our June 12, 2003 judgment.

Urista appeals a take-nothing jury verdict in his personal injury suit against BBB. In his first three issues, Urista contends that the trial court committed reversible error during jury selection, and, in issue five, Urista contends that the jury's verdict was against the great weight and preponderance of the evidence. As part of his fourth issue, which disposes of this appeal, Urista contends that the trial court erred by including an unavoidable-accident instruction in the jury charge. We reverse and remand.

## Background

On September 19, 1998, while shopping at a BBB store, Urista was allegedly hit in the head and knocked unconscious by plastic trash cans that fell from atop a store shelf. Reginald Neal, a store employee, was attempting to remove items from the shelf when the trash cans fell. Upon learning of the accident, David Traxler, a general manager with the store, approached Urista and filled out an accident report. Urista did not report serious injury at that time.

Five weeks later, Urista claimed injury and photographed the store in preparation for his personal-injury lawsuit against BBB. Urista claimed that he suffered a degenerative back condition as a result of being hit by the trash cans. At trial, Urista adduced evidence showing that Neal negligently caused the trash cans to fall. The jury nevertheless found no negli-

---

* The Hon. Adele Hedges, who became Chief Justice of the Court of Appeals, Fourteenth District of Texas at Houston on December 8, 2003, continues to participate by assignment for the disposition of this case, which was originally submitted on April 7, 2003 and was submitted on motion for rehearing on January 13, 2004.

gence by answering, "No" to the single broad-form question, "Did the negligence, if any, of Bed, Bath, & Beyond, Inc. proximately cause the occurrence in question?" In accordance with the jury's verdict, the trial court entered a take-nothing judgment against Urista.

### Charge Error—Unavoidable Accident Instruction

Urista's fourth issue challenges instructions included in the charge. As part of this issue, Urista contends that the trial court erred in submitting, over Urista's objection, the following instruction that accompanied the single, broad-form liability question:

> An occurrence may be an "unavoidable accident," that is, an event not proximately caused by the negligence of any party to it.

Urista contends that no evidence was presented to show that the trash cans fell because of a nonhuman environmental condition, and that, in fact, the evidence showed that the trash cans fell as a result of Neal's negligence.

■■■ We generally review charge error under an abuse-of-discretion standard. *See Tex. Dep't of Human Servs. v. E.B.,* 802 S.W.2d 647, 649 (Tex.1990). Trial courts have no discretion, however, to misstate the law. *See St. Joseph Hosp. v. Wolff,* 94 S.W.3d 513, 525 (Tex.2002) (holding that whether definition in charge "misstated the law" was legal question reviewable de novo).

■■■ "Unavoidable accident" is an inferential rebuttal theory. *See Lemos v. Montez,* 680 S.W.2d 798, 800 (Tex.1984). An inferential rebuttal theory:

> relies on facts that, if established, will disprove the existence of some essential element of the opponent's cause of action or affirmative defense. In other

words, an inferential rebuttal theory presents an inconsistent theory from the claim relied on by the opposing party for recovery or relief.

T. Ray Guy, The Jury Charge in Texas Civil Litigation: Texas Practice Series § 8.1 at 119 (3d ed.2003) (hereinafter T. Ray Guy, Jury Charge).

A trial court need only submit an unavoidable-accident instruction to the jury if the pleadings and evidence support the instruction. *See* Tex.R. Civ. P. 278("The court shall submit the questions, *instructions* and definitions in the form provided by [r]ule 277, which are raised by the written pleadings and the evidence.") (emphasis added); *see also* Tex.R. Civ. P. 277 ("Inferential rebuttal *questions* shall not be submitted in the charge.") (emphasis added); *Lemos,* 680 S.W.2d at 800 (explaining that rule 277 prohibits submitting "unavoidable accident" to jury by separate *question* and that erroneous inferential rebuttal instruction effectively required plaintiff to prove nonexistence of affirmative defense, as under former, discredited law); *Hukill v. H.E.B. Food Stores, Inc.,* 756 S.W.2d 840, 843 n. 2 (Tex.App.-Corpus Christi 1988, no writ) (noting that "unavoidable accident" should be submitted as instruction or definition) (citing *Lemos,* 680 S.W.2d at 800)); T. Ray Guy, Jury Charge § 8.4 at 123 (noting that rule 277 prohibition requires submitting inferential rebuttal theories to jury by instruction or definition).

■■■ An "unavoidable accident" is a nonhuman event not proximately caused by the negligence of any party to it. *Reinhart v. Young,* 906 S.W.2d 471, 472 (Tex. 1995); *Ordonez v. M.W. McCurdy & Co., Inc.,* 984 S.W.2d 264, 271 (Tex.App.-Houston [1st Dist.] 1998, no pet.). The sole purpose of an unavoidable-accident instruction is to ensure that jurors will understand that they need not necessarily

find that one or the other party to the suit was to blame for the occurrence. *Reinhart*, 906 S.W.2d at 472; *Ordonez*, 984 S.W.2d at 271. The instruction is most often used to (1) inquire about the causal effect of some physical or environmental condition or circumstance, such as fog, snow, sleet, wet or slick pavement, or obstruction of view, or (2) to resolve a case involving a very young child who is legally incapable of negligence. *Reinhart*, 906 S.W.2d at 472; *Ordonez*, 984 S.W.2d at 271. When there is no evidence that an accident was caused by this type of peculiar circumstance, submission of the instruction is improper. *Hill v. Winn Dixie Tex., Inc.*, 849 S.W.2d 802, 803 (Tex.1992). As the supreme court has stated, " 'courts should refrain from submitting an unavoidable accident instruction ... due to the risk that the jury will be misled or confused by the perception that the instruction represents a separate issue distinct from general principles of negligence.' " *Reinhart*, 906 S.W.2d at 472 (quoting *Hill*, 849 S.W.2d at 803).

### A. Instruction Erroneous

■ No evidence in this case suggested that the trash cans fell because of a peculiar circumstance that would warrant an unavoidable-accident instruction. BBB tacitly admits as much on appeal, noting that Urista "may, ultimately, be correct" in asserting charge error. Thus, we hold that the trial court erred in submitting the instruction. *See Reinhart*, 906 S.W.2d at 472.

### B. Error Was Harmful and Reversible

■ Well-settled law holds that an incorrect jury instruction will not warrant reversal unless it probably caused the rendition of an improper judgment. *See* Tex. R.App. P. 44.1(a)(1); *e.g., Ordonez*, 984 S.W.2d at 272. The supreme court has recently clarified that reversible error in the charge also occurs when error in the charge prevents the appellant from properly presenting its case to the court of appeals. *See* Tex.R.App. P. 44.1(a)(2); *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 388–89 (Tex.2000) (citing and applying same). We review the entire record to determine whether the instruction amounted to reversible error. *See Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 480 (Tex.2001). An incorrect instruction is especially likely to cause reversible error when the evidence is conflicting and the issues hotly contested. *See id.; Hukill*, 756 S.W.2d at 844.

BBB relies on *Reinhart* in contending that the trial court's submitting the unavoidable-accident instruction, while erroneous, was nevertheless harmless because the instruction did not result in an improper judgment. 906 S.W.2d at 474. In *Reinhart*, after finding that the trial court erroneously submitted an unavoidable-accident instruction, the supreme court held that submitting the instruction did not constitute reversible error for the following reasons: (1) the defendant introduced ample evidence at trial to support the jury's finding of no negligence, thus prompting a unanimous jury-verdict in the defendant's favor; (2) the charge also contained an instruction concerning the doctrine of sudden emergency, which reiterated much of the unavoidable-accident instruction, but to which the plaintiff did not object; and (3) no witnesses mentioned the unavoidable accident issue, and (4) the defendant's attorney made only a passing reference to it in closing argument. *See id.* at 473–74. BBB contends that error in the instant case should be construed in the same manner as *Reinhart*. We conclude that BBB's reliance on *Reinhart* is misplaced and that submission of the unavoidable-accident instruction was reversible error under the circumstances of this case.

Here, in contrast to the defendant in *Reinhart,* the evidence supporting the jury's finding of no negligence liability was not "ample." *See id.* at 473. To the contrary, a question arises whether the jury's failure to find BBB negligent was against the great weight of the evidence.[1] Traxler testified that Urista would not have been injured if Neal had been properly removing items from atop the shelf in question properly. Traxler further testified that "common sense would tell you that [Neal], probably human error, probably knocked one of the trash cans over." Despite this testimony, BBB did not introduce any evidence of its own and chose to rest at the conclusion of Urista's case. *Cf. id.* Similarly, in contrast to *Reinhart,* in which the defendant secured a unanimous jury verdict, two of the 12 jurors would have found BBB negligent. *See id.* From an evidentiary standpoint, this case bears little resemblance to *Reinhart.* In further contrast to *Reinhart,* in which the charge included an additional instruction to which the complaining party had not objected, *id.* at 474, the charge here included an additional instruction on "new and independent cause," to which Urista also objected.

Moreover, in contrast to *Reinhart,* the record before us suggests that the jury may have relied on the unavoidable-accident instruction in answering "No" to the negligence liability question. Although neither party disputed that Neal, while working atop a store shelf, caused the trash cans to fall onto Urista, each party characterized Neal's conduct differently. Urista described Neal's conduct as negligence. BBB, on the other hand, referred to Neal's conduct as an "accident" or mere "human error." Similarly, one of BBB's main contentions at trial was that "accidents happen," a theory much akin to an unavoidable accident. Once again, in contrast to *Reinhart, see id.,* BBB's trial counsel emphasized the unavoidable-accident alternative in closing arguments to the jury, stating at one point as follows:

> The court tells you there's such a thing as an unavoidable accident. I'm not saying that [BBB] wasn't around and might have caused it, and the court tells that to you ... [but] people have to understand that every accident is not caused by negligence. There's a lot of accidents in this world that are unavoidable accidents. That's what the court says to you ... it wasn't intended to happen, it just did.

The record demonstrates that BBB persistently injected its "accident theory" during trial. The jury's consideration of this theory was thus likely to be influenced by the erroneous unavoidable-accident instruction in this highly contested case. *See Hukill,* 756 S.W.2d at 844 (holding erroneous unavoidable-accident instruction harmful when evidence at trial presented close question regarding negligence). Although we have noted that the jury may have relied on the "unavoidable accident" instruction and also consider it likely that the jury relied on the erroneous instruction, we cannot, however, discern whether this occurred.

In addition to the points on which we have distinguished *Reinhart,* we also note that *Reinhart* predates the supreme court's recent instructions on how we are to analyze whether error in the charge constitutes reversible error in cases like this, that is, cases in which the effect of charge error is not clearly discernable.

---

1. Urista has challenged the factual sufficiency of the evidence to support the jury's failure to find in his favor in a separate issue.

As addressed above, an inferential rebuttal theory presents an inconsistent *theory* from the claim relied on by the opposing party for recovery or relief. *See* T. RAY GUY, JURY CHARGE § 8.1 at 119. The single, broad-form liability question here inquired, "Did the negligence, if any, of Bed, Bath, & Beyond, Inc. proximately cause the occurrence in question?" In addition to defining "negligence," the same question instructed the jury that, "An occurrence may be an 'unavoidable accident,' that is, an event not proximately caused by the negligence of any party to it." The single, broad-form question thus included the two following theories: negligence and unavoidable accident. No one disputes that the first theory was proper. As addressed above, the second theory was error.

*Casteel* instructs us that, because our system of justice compels that parties be judged by a jury that has been properly instructed in the law, *id.* at 388, harmful error occurs when (1) a single, broad-form liability question erroneously commingles valid and invalid theories, (2) the appellant objects timely and specifically, and (3) it cannot be determined whether the erroneously submitted theory formed the sole basis of the jury's finding. *See id.* at 389. With regard to the third prong of this analysis, the supreme court stated as follows:

> [T]he best the [reviewing] court can do is to determine that some evidence *could* have supported the jury's conclusion on a legally valid theory. To hold this error harmless would allow a defendant to be held liable without a judicial determination that a factfinder actually found that the defendant *should* be held liable on proper, legal grounds.

*Id.* at 388. Given these circumstances, the supreme court concluded that the trial court's error probably prevented the appealing party from properly presenting his case to the court of appeals. *Id.* at 388 (citing TEX.R.APP. P. 61.1, 44.1(a)).

Here, as in *Casteel*, the single, broad-form liability question erroneously commingled a valid negligence theory with an erroneous inferential rebuttal instruction that injected an invalid theory of "unavoidable accident." Although Urista objected timely and specifically, the trial court overruled his objection. As in *Casteel*, although we have concluded it likely, on reviewing the record, that the erroneous instruction formed the sole basis for the jury's finding that BBB was not negligent, we cannot determine this conclusively. Therefore, the trial court's error in including the instruction probably was reversible error that prevented Urista from presenting his case to this Court, and remand for a new trial is proper. *See id.* at 390; TEX.R.APP. P. 44.1(a)(2).

We conclude that this case is not only factually and procedurally distinguishable from *Reinhart*, but controlled by *Casteel*. We sustain the portion of Urista's fourth issue that challenges the "unavoidable accident" instruction in the jury charge. Because of our disposition of this issue, we need not address the remaining portion of Urista's fourth issue or his remaining issues.

### Conclusion

We reverse the judgment of the trial court and remand the cause for a new trial.

Justice JENNINGS, dissenting.

TERRY JENNINGS, J., dissenting.

Because the majority opinion errs in holding that the trial court's submission of an unavoidable accident instruction in this case was harmful error and that this case

is "controlled by *Casteel*,"[1] I respectfully dissent.

I agree that the trial court erred in submitting an unavoidable accident instruction in this case. Such an instruction is proper only when there is evidence that the event was proximately caused by a non-human condition and not by the negligence of any party to the event. *Hill v. Winn Dixie Texas, Inc.,* 849 S.W.2d 802, 803 (Tex.1992). When there is no evidence that the accident was caused by a non-human condition, submission of the instruction is generally improper. *Id.* Here, there is simply "no affirmative evidence of an extrinsic, unavoidable event" in the record to support the unavoidable accident instruction. *See id.*

However, we may not reverse a judgment on appeal on the ground that the trial court made an error of law unless we conclude that the complained-of error *"probably caused* the rendition of an improper judgment" or "probably prevented the appellant from properly presenting the case to the court of appeals." TEX. R. APP. P. 44.1(a)(1) (emphasis added). Error in a civil jury charge is reversible "only if, in the light of the entire record," it probably did cause the rendition of an improper judgment. *Reinhart v. Young,* 906 S.W.2d 471, 473 (Tex.1995). Under the harmless error rule, it is an appellant's responsibility to demonstrate that he has suffered harm from the submission of an improper jury charge. *Nacol v. McNutt,* 797 S.W.2d 153, 156 (Tex.App.—Houston [14th Dist.] 1990, writ denied).

In his forth issue, Urista argues that the improper instruction "led the jury into returning an improper verdict" because (1) the case was "hotly contested"; (2) his wife testified that she saw merchandise fall off the shelf and hit Urista; (3) Bed, Bath &

Beyond did not dispute that one of its employees was on a ladder on the other side of the shelf when Urista was hit by falling trash cans; (4) there was testimony that the shelf, from which the trash cans fell, was 12 feet high and accessible only to Bed, Bath & Beyond employees; (5) counsel for Bed, Bath & Beyond "referred to the 'unavoidable accident' instruction in his closing argument"; and (6) the fact that the verdict was not unanimous shows that the case was very close.

In regard to points one through four and six, we must be mindful that an improper jury instruction is especially likely to cause an unfair trial when the trial is hotly contested and the evidence is "sharply conflicting." *See Quantum Chem. Corp. v. Toennies,* 47 S.W.3d 473, 480 (Tex.2001). Just because a case is contested and a verdict not unanimous, however, does not mean that the evidence was "sharply conflicting."

As noted in the majority opinion, Bed, Bath & Beyond "did not introduce any evidence of its own and chose to rest at the conclusion of Urista's case." Here, the record reveals that Bed, Bath & Beyond, rather than presenting and relying on "sharply conflicting" evidence, chose to attack Urista's credibility through cross-examination. The jury simply may not have believed Urista and his witnesses. The record also reveals that Urista presented no evidence on the issue of foreseeability—that Bed, Bath & Beyond had any actual or constructive knowledge that the trash cans in question posed an unreasonable risk of harm. Moreover, Urista admitted that he had suffered three back injuries before the incident in question and another after the incident. Thus, the jury could have reasonably concluded that the inci-

---

1. *See Crown Life Ins. v. Casteel,* 22 S.W.3d     378 (Tex.2000).

dent in question was not the cause of Urista's injuries.

In regard to point five, although trial counsel for Bed, Bath and Beyond referred to the unavoidable accident instruction in his closing argument, the thrust of his argument, as reflected in 23 pages of the record, was that Urista had simply failed to meet his burden of proof, a failure upon which counsel kept "hammering." Counsel focused on Urista's failure to call Reginald Neal, a store employee, as a witness; the lack of Urista's credibility as a witness; and the lack of credible evidence regarding Urista's damages. In fact, Bed, Bath & Beyond's counsel argued that Urista was a "walking lawsuit" and that Urista had manufactured his case and his damages. Counsel's main argument was that Urista suffered from a pre-existing, degenerative disk disease and saw "an opportunity to become compensated for a condition, which he knows he had, which he knows he will have for the rest of his life."

Rather than conducting a traditional harm analysis, the majority, in response to arguments made by Bed, Bath & Beyond, distinguishes *Reinhart* and erroneously concludes that Urista was harmed by the submission of the unavoidable accident instruction. The majority notes that, "in contrast to the defendant in *Reinhart*," Bed, Bath & Beyond did not introduce "ample" evidence to support the finding of no negligence, the jury verdict was not unanimous, and the charge contained an instruction on "new and independent cause," to which Urista objected. It also concludes that Bed, Bath & Beyond "emphasized" the unavoidable accident instruction in closing arguments.

I agree that *Reinhart* is factually distinguishable. However, simply because this case is factually distinguishable from *Reinhart*, does not mean that Urista, under the totality of circumstances presented, was

necessarily harmed. Nor can it be assumed that, because two members of the jury did not join in the verdict, they "would have found BBB negligent." The majority's analysis, with its focus on distinguishing *Reinhart*, in effect improperly penalizes Bed, Bath & Beyond for not introducing "ample" evidence to support the finding of no negligence.

In *Reinhart*, the Supreme Court found that "no evidence in this case even remotely suggests that the unavoidable accident instruction in any way caused the case to be decided differently than it would have been without it." *Id.*, 906 S.W.2d at 473. Here, none of the points made by Urista demonstrates that the improper instruction probably caused the rendition of an improper judgment. There is no evidence in this case to suggest that the unavoidable accident instruction in any way caused the case to be decided differently from how it would have been decided without the instruction. To the contrary, the record reveals that Bed, Bath & Beyond called the testimony of Urista and his witnesses into serious question. Moreover, nothing suggests that the jury based its verdict in any way on the unavoidable accident instruction. Although trial counsel for Bed, Bath & Beyond, in the words of Urista, "referred to the 'unavoidable accident' instruction in his closing argument," counsel in no way "emphasized" the instruction and instead focused on the failure of Urista to meet his burden of proof. In light of the totality of these circumstances, the erroneous submission of the unavoidable accident instruction in this case did not amount to a denial of the rights of Urista such that the error "probably caused the rendition of an improper judgment." *See* TEX. R. APP. P. 44.1(a)(1).

In regard to *Casteel*, the majority notes that "the single, broad-form liability question erroneously commingled a valid negli-

gence theory with an inferential rebuttal instruction that injected an invalid theory of 'unavoidable accident.'" Therefore, the majority concludes, because we cannot determine "conclusively" whether the erroneous instruction formed the sole basis for the jury's finding of no negligence, that Urista was "prevented" from presenting his case to this Court and that this case is "controlled by *Casteel.*"

However, the holding of *Casteel* is quite specific:

> [W]e hold that when a trial court submits a single broad-form liability question incorporating *multiple theories of liability,* the error is harmful and a new trial is required when the appellate court cannot determine whether the jury based its verdict on an improperly submitted invalid theory.

*Id.,* 22 S.W.3d at 388 (emphasis added).

*Casteel*'s holding in regard to broad-form submission of "multiple theories of liability" has not been extended to instructions on defensive theories. In fact, such an extension is logically precluded because inferential rebuttal issues may not be submitted to the jury. *See* TEX. R. CIV. P. 277. As noted by the Supreme Court, a "special issue inquiring about unavoidable accident should not be submitted because it [is] an inferential rebuttal issue that require[s] plaintiff[s] to prove the nonexistence of an affirmative defense." *Lemos v. Montez,* 680 S.W.2d 798, 800 (Tex.1984). Accordingly, "[s]ince 1971, the rule has been that an issue asking a jury about unavoidable accident is improper." *Id.* *Casteel*'s holding in regard to broad-form versus granulated submission of liability theories is simply inapplicable in this case.

Because this case is not controlled by *Casteel,* and because, under a traditional harm analysis, Urista has not demonstrated, and the record does not support a finding, that the trial court's erroneous submission of an unavoidable accident instruction in this case was harmful error, I would overrule Urista's fourth issue and address his remaining issues.