**Lois SMITH and Alfred Smith, Appellants,**

v.

**CENTRAL FREIGHT LINES, INC. and Robert James Kersey, Appellees.**

No. C14–88–162–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 13, 1989.

Rehearing Denied Aug. 3, 1989.

Mark A. McLean, Houston, for appellants.

E. Thomas Bishop, Mark M. Donheiser, Sandra N. Tucker, Dallas, Bill Payne, Bryan, for appellees.

Before PAUL PRESSLER, CANNON and ELLIS, JJ.

## OPINION

ELLIS, Justice.

This is an appeal from a personal injury suit arising out of a rear end collision. Appellant Lois Smith was attempting to turn left from Highway 6 into her driveway when she was hit from the rear by a truck driven by appellee Robert James Kersey while in the course and scope of his employment for appellee Central Freight Lines, Inc. The accident occurred on a four-lane highway between Navasota and College Station. Mrs. Smith and her husband, who was not in the vehicle, sued appellees for negligence and gross negligence, and the case was tried to a jury. Although the jury found that Mrs. Smith had suffered damages in the amount of $56,750, the jury also found no negligence on the part of either Mr. Kersey or Mrs. Smith. The trial court therefore entered a take nothing judgment against the Smiths. We affirm the trial court's judgment.

■ The Smiths appeal the judgment with five points of error. In point of error one, they argue that the trial court erred in not granting their motion for directed verdict on negligence and proximate cause as Kersey and Central Freight were negligent per se. The Smiths assert that they plead and proved a violation of TEX.REV.CIV.STAT. ANN. art. 6701d, § 61(a) (Vernon 1977), which reads as follows:

Sec. 61(a). The driver of a motor vehicle shall, when following another vehicle, maintain an assured clear distance between the two vehicles, exercising due regard for the speed of such vehicles, traffic upon and conditions of the street or highway, so that such motor vehicle can be safely brought to a stop without colliding with the preceding vehicle, or veering into other vehicles, objects or persons on or near the street or highway.

The occurrence of an accident or a collision is not of itself evidence of negligence. *Rankin v. Nash–Texas Co.*, 129 Tex. 396, 105 S.W.2d 195, 199 (Tex.Comm'n App. 1937, opinion adopted) (rear-end collision case). More specifically, the mere occurrence of a rear-end collision will not present evidence of negligence as a matter of law. The plaintiff must prove specific acts of negligence on the part of the following driver and must also prove proximate cause. *Vandyke v. Austin Indep. School Dist.*, 547 S.W.2d 354, 357 (Tex.Civ.App.—Austin 1977, no writ) (see for discussion of rear-end collision cases since *Rankin*). Whether the plaintiff succeeds in proving negligence and proximate cause by a preponderance of the evidence is then within the jury's province to determine. *Klein v. Brown–Griffin Texaco Distributors, Inc.*, 562 S.W.2d 910, 911 (Tex.Civ.App.—Amarillo 1978, writ ref'd n.r.e.).

The Smiths claim they proved Kersey was following too closely; however, the evidence concerning the accident was conflicting and the jury found that Kersey was not negligent. Thus, the Smiths' first point of error is essentially an evidentiary challenge and will be reviewed in tandem with points of error three through five. Those points contest the legal and factual sufficiency of the evidence to support the jury's answer to Special Issue No. 1, which asked whether the negligence of either Kersey or Mrs. Smith proximately caused the accident.

■ As the Smiths are attacking the legal sufficiency of an adverse finding to an issue on which they had the burden of proof, they must demonstrate on appeal that the evidence conclusively established all vital facts in support of the issue. *Ritchey v. Crawford*, 734 S.W.2d 85, 86 (Tex. App.—Houston [1st Dist.] 1987, no writ). In reviewing such an argument, this court must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. If there is no evidence to support the finding, then we must examine the entire record to determine if the contrary proposition is established as a matter of law. *Holley v. Watts,*

629 S.W.2d 694, 696 (Tex.1982). Regarding the Smith's factual sufficiency challenge, this court must examine all of the evidence and should set aside the verdict only if it is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

With these standards in mind, we will review the evidence. On the day of the accident, Robert Kersey was hauling a trailer from Houston to Bryan. At the time of trial, he had been driving for Central Freight Lines for over a decade, and he had made the trip between Navasota and College Station approximately seventy-five times. Kersey testified that the accident occurred at dusk between 7:00 and 7:15 p.m. He was going up an incline in the right lane, traveling about fifty-five miles per hour and following a car traveling about fifty miles per hour. Central Freight requires its trucks to maintain a distance of five hundred feet between vehicles, so when it appeared that he was overtaking the car, Kersey opted to change lanes. He looked forward, checked his rearview mirror, checked the lane beside him, looked forward again and "didn't see a vehicle in the way up there." Had he felt the lane change was in any way hazardous, he would have stayed in the right lane and slowed down.

Kersey further testified that either before or as he changed lanes, he saw Mrs. Smith's pickup off in the distance with no lights of any kind. He had not traveled very far when he saw her left turn signal light come on, but he never saw any brake lights. He stated that Mrs. Smith slowed to thirty miles per hour and that the change was sudden, not gradual. As there were cars in both the right lane and the oncoming lane preventing a move, Kersey applied his brakes and tried to maintain control of the truck. Asked by Mrs. Smith's counsel whether he ever traveled at a speed of sixty-five to pass a vehicle, Kersey responded that he could not because his truck is equipped with a governor that controls the maximum speed at sixty miles per hour.

Mrs. Smith's driveway is located near the crest of a gradual incline. She testified that she was checking on a heifer in a field on the opposite side of the highway from her house. She remembered locking the gate and thinking that she had better hurry to get home before dark; however, she remembered nothing about the accident. Mrs. Smith further testified that when turning into her driveway, her habit is to use her left turn signal and to tap on the brakes (or "brake, turn loose, brake, turn loose") to alert people behind her that she is slowing.

There were two vehicles in the right lane when the accident occurred. Theresa Murphy Baggerly was driving a car with her father, Martin Murphy, as a passenger. Lonnie Crisp and his passenger Marie Weichert were driving a pickup and were towing a Volkswagen bus. All four people had been employed by a company to transport cars to and from Houston. Mrs. Baggerly testified by deposition that she first noticed Kersey's truck when it was about ten feet behind her in the left lane. She was going about fifty miles per hour and estimated the speed of the truck at between fifty and fifty-five.

Mrs. Baggerly stated that she was about fifty feet from Mrs. Smith's pickup when she first saw the left turn signal light, and she thought this occurred thirty seconds (at the most not over a minute) prior to impact. The pickup was stopped at the time of the accident; however, Mrs. Baggerly could not recall if she saw brake lights. The truck driver braked but was unable to stop, and the truck hit the pickup when it was right beside the Murphys. Mrs. Baggerly testified that the accident was unavoidable and that Kersey did everything he could to avoid it. When asked if the fact that Mrs. Smith was stopped on the highway could have contributed to the accident, Mrs. Baggerly said yes.

Martin Murphy's deposition testimony was very similar to his daughter's except that he saw both brake lights and the left turn signal light on the pickup. He testified Mrs. Smith gave "prewarning" that she was going to turn about fifty feet

ahead of time, and he did not see her do anything that contributed to the accident. However, he also stated that Kersey made a safe lane change and that, in his opinion, at the time Murphy first saw the lights on the pickup, it would not have been possible for Kersey to avoid the accident.

Marie Weichert was a passenger in the other car, which was somewhat ahead of the Murphys, and she viewed the accident through the window of a vehicle in tow. She testified that Mrs. Smith was stopped in the left lane with her left turn signal on but no brake lights. Ms. Weichert also testified that when the investigating Department of Public Safety officer asked Kersey how fast he was going, Kersey responded, "Just a little too fast."

One of the DPS officers who investigated the accident, Robert Gideon, testified by deposition. In his accident report, Officer Gideon checked off that Kersey "changed lanes when unsafe" and was "following too closely" as factors contributing to the accident. However, in his testimony he was reluctant to assign fault. He felt that both parties were "victims of circumstance." Gideon suggested that Kersey may have been distracted by the lane change in that he was checking his rearview mirror and focused his attention too late on what was in front of him. Gideon also agreed that it was dangerous for Mrs. Smith to be on a multi-lane highway with no turning lanes and to try to turn left even though she had the legal right to do so. When asked about Kersey's statements concerning his speed, the officer said Kersey stated he was traveling the speed limit and did not state that he was going a little too fast.

Finally, both parties presented the testimony of accident reconstruction experts. Ted Marules, testifying for Mrs. Smith, concluded that Kersey was traveling between sixty and seventy miles per hour at the time of impact; that Kersey did not brake until virtually the last possible second; and that Mrs. Smith's pickup should have been easily visible to Kersey. In his opinion, the accident was caused by improper lookout and/or excessive speed on the part of Kersey.

Dean Alberson and Don Evans testified on behalf of Kersey and Central Freight. Alberson stated that the physical evidence indicated Mrs. Smith was not braked at the moment of impact but was traveling twenty to twenty-five miles per hour and that Kersey was traveling forty-five miles per hour. Furthermore, the point of impact was approximately eighty to one hundred feet from her driveway. Alberson also stated that a vehicle traveling fifty to fifty-five miles per hour could not stop in time to avoid a collision if given fifty feet of signal.

Evans, Alberson's employer, agreed that Mrs. Smith was still moving at the time of impact. He concluded that she failed to keep a proper lookout for traffic conditions around her when she attempted her turn. As for Kersey's conduct, Evans felt the lane change could have been an error in judgment; however, it is not desirable for a large truck going up a grade to slow down when someone is going slower than normal. The usual maneuver is to move to the high speed lane to get around the vehicle if there is sufficient distance to do so.

■ As the Smiths acknowledge, it is extremely difficult to set aside a jury verdict. There is no question that Mrs. Smith was injured in the accident; however, the jury was not convinced that Robert Kersey's conduct was either negligent or the proximate cause of the accident. There was conflicting testimony about how fast Kersey was going, whether he made a safe lane change, whether Mrs. Smith's brake lights were on and how much warning she gave that she was turning left. The jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Rego Co. v. Brannon*, 682 S.W.2d 677, 680 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). After reviewing the evidence in accordance with the standards previously set forth, we find the evidence legally and factually sufficient to support the jury's findings, and points of error one, three, four and five are overruled.

In point of error two, the Smiths maintain that the trial court erred in refusing to instruct the jury on "assured clear distance" pursuant to art. 6701d, § 61(a), cited

earlier. The Smiths argue that without the aid of either common law elements or statutory instructions, the jury was left to decide issues of negligence with no guidance.

Specifically included in the first edition of TEXAS PATTERN JURY CHARGES is a special issue based on § 61(a) that asks whether a party failed to maintain an assured clear distance between his vehicle and another and defines *assured clear distance*. 1 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 5.09 (1969). However, that issue does not appear in the second edition. In that edition, the commentary to PJC 5.01, regarding negligence per se and common-law negligence, notes that "[a] few negligence per se standards found in statutes or regulations have been held simply to restate the standard of 'ordinary care' and not to alter the duty that already exists at common law." In those instances, it is redundant to submit a question on the statutory standard or to instruct the jury regarding it, and the negligence per se standard is subsumed under the broad-form negligence question (PJC 4.01). 1 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 5.01 (1987).

■ The "assured clear distance" instruction requested by the Smiths referred to "that distance which would be maintained by a driver *using ordinary care* when following another vehicle ..." (emphasis added). We find that this instruction merely restates the standard of ordinary care and does not alter the common law duty. Therefore, the trial court's broad form submission of the negligence question was proper, and point of error two is overruled.

Appellees Kersey and Central Freight ask that we award them damages under TEX.R.APP.P. 84 for an appeal taken for delay and without sufficient cause. We decline to do so as we do not find the Smiths' arguments to be without merit.

We affirm the judgment of the trial court.