**Affirmed and Memorandum Opinion filed July 12, 2018.**



In The

# Fourteenth Court of Appeals

### NO. 14-17-00485-CV

### JESSICA ALEXANDER, Appellant

### V.

### HALLIBURTON ENERGY SERVICES INC. D/B/A HALLIBURTON AND JUAN JOSE SALOMON, Appellees

**On Appeal from the 234th District Court
Harris County, Texas
Trial Court Cause No. 2015-58155**

## M E M O R A N D U M   O P I N I O N

In this personal injury case, appellant Jessica Alexander challenges the take-nothing judgment in favor of appellees Halliburton Energy Services Inc. d/b/a Halliburton and Juan Jose Salomon. In two issues, Alexander asserts that the trial court reversibly erred in (1) submitting an unavoidable accident jury instruction and (2) denying her motion for new trial or for judgment notwithstanding the verdict. We affirm.

## Background

We summarize the facts in the light most favorable to the jury's verdict and the judgment. *See, e.g.*, *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). On a January morning in 2015, Salomon, a Halliburton employee driving a company truck, was traveling behind Alexander's car while both vehicles prepared to merge onto Loop 337 in Comal County, Texas. Salomon was not speeding and was following Alexander's car at what he believed to be a safe distance. Before "getting up to speed to blend into the freeway," Alexander looked over her left shoulder for oncoming traffic. Salomon similarly checked his "blind spot" for oncoming traffic. When a third vehicle traveling in front of Alexander unexpectedly stopped at a yield sign rather than merging onto Loop 337, Alexander also stopped. Salomon rear-ended Alexander's car, pushing her car into the vehicle stopped in front of her.

After the accident, Salomon pulled onto the shoulder of the road and reported to his supervisor that he had been in an accident. Alexander also pulled over and called 911 to report the accident. New Braunfels Police Department Officer J. Green responded to the scene. Green's report notes Salomon's "fail[ure] to control speed" and indicates that Salomon's conduct was a contributing factor to the accident. However, Green did not make any specific determinations regarding Salomon's speed or following distance, nor did he issue a citation to Salomon.

Alexander sued Salomon and Halliburton for negligence, negligence per se, and gross negligence. She alleged that Salomon, while driving a motor vehicle in the course and scope of his employment with Halliburton, negligently struck her vehicle causing personal injuries. Alexander sought actual and punitive damages in excess of $1,000,000. Salomon and Halliburton answered with a general denial and pleaded the defense of unavoidable accident.

The case was tried to a jury. The trial court submitted a single broad-form negligence question, which asked the jury whether the negligence, if any, of Halliburton or Salomon proximately cased the occurrence in question. Over Alexander's objection, the trial court instructed the jury that "[a]n occurrence may be an 'unavoidable accident,' that is, an event not proximately caused by the negligence of any party to the occurrence."[1]

The jury answered the broad-form submission as to both Halliburton and Salomon "No." Alexander filed a motion for judgment notwithstanding the verdict ("JNOV") or for new trial. The trial court signed a take-nothing judgment in Salomon's and Halliburton's favor and denied Alexander's motion for JNOV or new trial the same day.

This appeal timely followed.

### "Unavoidable Accident" Instruction

In her first issue, Alexander contends the trial court reversibly erred in submitting an "unavoidable accident" jury instruction because the evidence presented at trial did not support its submission.[2]

---

[1] The unavoidable accident instruction included in the court's charge tracks verbatim that set forth in the Texas Pattern Jury Charges. *See* Tex. Pattern Jury Charges: General Negligence, PJC 3.4 (2016).

[2] Alexander's first issue conflates her jury charge complaint with a factual sufficiency challenge:

> The Trial Court erred in submitting the "unavoidable accident" jury instruction as the evidence presented at trial does not support the "unavoidable accident" jury instruction and the jury finding that there was zero negligence as to all parties is so against the great weight and preponderance of the evidence that the submission of the instruction probably caused the rendition of an improper judgment.

We will discuss the two arguments separately, addressing Alexander's charge complaint first.

3

"Determining necessary and proper jury instructions is a matter within the trial court's discretion, and appellate review is for abuse of that discretion." *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 856 (Tex. 2009); *see also Vast Constr., LLC v. CTC Contractors, LLC*, 526 S.W.3d 709, 722 (Tex. App.—Houston [14th Dist.] 2017, no pet.). For an instruction to be proper, it must: (1) assist the jury; (2) accurately state the law; and (3) find support in the pleadings and the evidence. *Vast Constr.*, 526 S.W.3d at 722 (citing Tex. R. Civ. P. 278; *Hawley*, 284 S.W.3d at 855-56). Alexander challenges only the third factor in this appeal.

An unavoidable accident is "an event not proximately caused by the negligence of any party to it." *Reinhart v. Young*, 906 S.W.2d 471, 472 (Tex. 1995). Providing an inferential rebuttal instruction to the jury on unavoidable accident advises jurors that "they do not have to place blame on a party to the suit if the evidence shows that conditions beyond the party's control caused the accident." *Dillard v. Tex. Elec. Coop.*, 157 S.W.3d 429, 432 (Tex. 2005) (citing *Reinhart*, 906 S.W.2d at 472).[3] An instruction on unavoidable accident is "most often used to inquire about the causal effect of some physical condition or circumstance such as fog, snow, sleet, wet or slick pavement, or obstruction of view, or to resolve a case involving a very young child who is legally incapable of negligence." *Reinhart*, 906 S.W.2d at 472. But the instruction is not limited to only those circumstances—it merely informs the jury that it may consider causes of the occurrence other than the negligence of the parties. *Dillard*, 157 S.W.3d at 433.

Alexander contends the evidence did not warrant submission of the unavoidable accident instruction. She relies on cases pre-dating *Dillard* in

---

[3] "An inferential rebuttal defense operates to rebut an essential element of the plaintiff's case by proof of other facts." *Dillard*, 157 S.W.3d at 430.

advocating for a narrow view of this instruction, limiting its application to its historical association with defendants who blame children or the weather.[4] But "*that is not what it says. All it says is that accidents may be nobody's 'fault' in the legal sense.*" *Bed, Bath & Beyond, Inc. v. Urista*, 211 S.W.3d 753, 760 (Tex. 2006) (Brister, J., concurring) (emphasis in original) (footnote omitted) (citing *Dillard*, 157 S.W.3d at 433). Thus, following more recent guidance from the Supreme Court of Texas, we reject Alexander's view, which would unduly restrict the doctrine's application only to limited factual circumstances. *See id.*; *see also Dillard*, 157 S.W.3d at 432-33.[5]

Here, we conclude that some evidence a reasonable jury could have credited supported the submission of an unavoidable accident instruction. *See, e.g., Otis Elevator Co. v. Shows*, 822 S.W.2d 59, 62 (Tex. App.—Houston [1st Dist.] 1991, writ denied) (explaining that this instruction "is properly submitted if any evidence shows that neither party proximately caused the accident in question"). *See generally Hill v. Winn Dixie Tex., Inc.*, 849 S.W.2d 802, 804 (Tex. 1992) (Hecht, J.,

---

[4] *See Hill v. Winn Dixie Tex., Inc.*, 849 S.W.2d 802, 803 (Tex. 1992); *Yarborough v. Berner*, 457 S.W.2d 188, 190-91 (Tex. 1971); *Dallas Ry. & Terminal Co. v. Bailey*, 250 S.W.2d 379, 385 (Tex. 1952); *Hicks v. Brown*, 151 S.W.2d 790, 792 (Tex. 1942); *Hukill v. H.E.B. Food Stores, Inc.*, 756 S.W.2d 840, 843 (Tex. App.—Corpus Christi 1988, no writ); *Leatherwood Drilling Co. v. TXL Oil Corp.*, 379 S.W.2d 693, 697 (Tex. Civ. App.—Dallas 1964, writ ref'd n.r.e.).

[5] This court has held that an unavoidable accident instruction was not warranted when the defendant presented no evidence of a "non-human" event or condition that caused the plaintiff's injury. *See Rauch v. Patterson*, 832 S.W.2d 57, 61 (Tex. App.—Houston [14th Dist.] 1992, writ denied); *Brown v. Goldstein*, 678 S.W.2d 539, 542 (Tex. App.—Houston [14th Dist.] 1984), *rev'd on other grounds*, 685 S.W.2d 640 (Tex. 1985); *Foley's Dep't Store v. Gardner*, 588 S.W.2d 627, 629 (Tex. Civ. App.—Houston [14th Dist.] 1979, no writ). However, these cases predate *Dillard* and *Bed, Bath & Beyond*; accordingly, we do not consider them controlling. Appellant additionally relies on *Priest v. Myers*, 598 S.W.2d 359, 363 (Tex. Civ. App.—Houston [14th Dist.] 1980, no writ). This case involved the propriety of a sudden emergency instruction, not an unavoidable accident instruction. *See id.* at 363-64. Moreover, *Priest* also predates *Dillard* and *Bed, Bath & Beyond*, so it does not control our analysis.

dissenting) (disagreeing with majority that unavoidable accident instruction was improperly submitted because the evidence raised an inference that cookie that caused slip-and-fall accident fell to floor "without anyone's negligence or knowledge"). Salomon testified that, before the accident, he was not speeding, not talking on his cell phone, not tired, and not following too closely. He explained that, as he prepared to merge onto Loop 337, he briefly checked his "blind spot" to look for any oncoming traffic and was unable to avoid rear-ending Alexander's vehicle when it came to an abrupt stop. Alexander testified that traffic on Loop 337 was light, she was "getting up to speed to blend into the freeway," and she stopped when the vehicle in front of her unexpectedly stopped. She agreed that she did not know what Salomon was doing at the time of the accident; thus, she could not testify that he was speeding, talking on his cell phone, or following her too closely. Alexander also agreed that she was not expecting the car in front of her to stop; instead, she expected the driver to speed up and merge onto Loop 337. Finally, Alexander acknowledged that, in some cases, when a driver attempts to merge onto a freeway, briefly looks away to check for oncoming traffic, then runs into the car in front of him that has unexpectedly stopped, the accident may not be the driver's fault.

Regardless why the driver in front of Alexander stopped unexpectedly, the above testimony constitutes some evidence that the accident at issue was proximately caused by the lead vehicle's coming to an unexpected stop rather than Salomon's negligence. It also supports a reasonable inference that the accident occurred despite the fact that Salomon acted as would any ordinary driver in similar circumstances. Subsequent to *Dillard*, courts of appeals have concluded that submission of an unavoidable accident instruction is proper when some evidence showed that something other than the defendant's negligence caused a traffic accident. *See, e.g., Harris v. Vazquez*, No. 03-07-00245-CV, 2008 WL 2309179, at

*3-4 (Tex. App.—Austin June 5, 2008, no pet.) (mem. op.) (unavoidable accident instruction properly given because defendant testified his view of oncoming traffic was obstructed by parked truck, which provided some evidence that collision was not proximately caused by the negligence of any party); *Hauschildt v. Cent. Freight Lines, Inc.*, No. 10-10-00185-CV, 2011 WL 455264, at *4 (Tex. App.—Waco Feb. 9, 2011, pet. denied) (mem. op.) (no error in submitting unavoidable accident instruction when some evidence showed defendant did not see plaintiffs' vehicle stopped on roadway, briefly looked away to check rear-view mirrors, and did not have time to stop when he saw the plaintiffs' vehicle); *accord Bed, Bath & Beyond*, 211 S.W.3d at 756 ("The truth is, sometimes accidents are no one's fault, and an unavoidable accident instruction . . . simply explains to the jury that they are not required to find someone at fault."); *Baker v. Mast*, No. 12-08-00411-CV, 2010 WL 1367739, at *3 (Tex. App.—Tyler Apr. 7, 2010, no pet.) (mem. op.) (instruction on unavoidable accident appropriate because evidence supported defendant's position that accident in question was not proximately caused by the negligence of any party).

Alexander also highlights Salomon's testimony that the accident was "preventable" by using "proper safety techniques." During his testimony, Salomon agreed with Alexander's trial counsel that the accident could have been avoided if he had "kept a lookout for what was in front of [him and] controlled [his] speed when the Alexander vehicle was slowing and stopping." To the extent Alexander contends this evidence precluded the unavoidable accident instruction, we disagree. This particular excerpt from Salomon's testimony may have weighed against an instruction but the other evidence summarized above supported it. As long as some evidence supports an unavoidable accident instruction, a trial court acts within its discretion in submitting the instruction. *Otis Elevator Co.*, 822 S.W.2d at 62.

7

In sum, given the evidence detailed above, we cannot say the trial court abused its discretion in submitting the unavoidable accident instruction to the jury. We overrule Alexander's challenge to the instruction.

## Sufficiency of the Evidence

Alexander also challenges the legal and factual sufficiency of the evidence to support the jury's failure to find negligence as to Salomon and Halliburton.[6] Based on the asserted evidentiary insufficiency, Alexander urges that the trial court erred in denying her motion for JNOV and motion for new trial.

To prove negligence, a plaintiff must establish duty, breach, and damages proximately caused by the breach. *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006) (per curiam). "Proof that the defendant's vehicle rear-ended the plaintiff's vehicle does not establish negligence as a matter of law." *Gaskey v. One Source Sec. & Found*, No. 14-07-00850-CV, 2009 WL 7047692, at *1 (Tex. App.—Houston [14th Dist.] June 18, 2009, no pet.) (mem. op.) (citing *Till v. Thomas*, 10 S.W.3d 730, 733 (Tex. App.—Houston [1st Dist.] 1999, no pet.); *Smith v. Cent. Freight Lines, Inc.*, 774 S.W.2d 411, 412 (Tex. App.—Houston [14th Dist.] 1989, writ denied)); *see also Arn v. Stuart*, No. 03-09-00284-CV, 2010 WL 4378395, at *3 (Tex. App.—Austin Nov. 5, 2010, no pet.) (mem. op.) ("Texas courts have consistently held that the mere occurrence of a rear-end automobile accident is not of itself evidence of negligence."). A plaintiff must still prove that the defendant's

---

[6] Based on the jury charge submitted, Alexander's negligence claims against Halliburton are necessarily premised on the negligence, if any, of Salomon. *See, e.g.*, *Rossell v. Cent. W. Motor Stages, Inc.*, 89 S.W.3d 643, 656-67 (Tex. App.—Dallas 2002, pet. denied) (explaining that causes of action for negligent entrustment or negligent hiring, like the theory of respondeat superior, are not actionable absent a tort committed by the employee). In any event, Alexander does not seek reversal of the judgment in Halliburton's favor on grounds that Halliburton was negligent independently of Salomon.

specific acts of negligence proximately caused the plaintiff's damages. *Arn*, 2010 WL 4378395, at \*3; *Gaskey*, 2009 WL 7047692, at \*1.

When reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the judgment and indulge every reasonable inference that would support it. *Vast Constr., LLC*, 526 S.W.3d at 719 (citing *City of Keller*, 168 S.W.3d at 822). We credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not. *Id.* If there is more than a scintilla of evidence to support the judgment, we must uphold it. *Id.* More than a scintilla of evidence exists when the evidence supporting the finding rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Id.* We apply this standard mindful that the jury is the sole judge of the credibility of the witnesses and the weight to be given to their testimony, and we indulge every reasonable inference in support of the jury's findings. *Id.*

When reviewing the factual sufficiency of the evidence, we examine the entire record, considering all the evidence both in favor of and contrary to the challenged finding. *Id.* at 723 (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)). We will overturn a finding only when it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* (citing *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986)).

Alexander suggests that the judgment should be reversed because the record contains "uncontroverted" evidence that she had come to a stop and was rear-ended by Salomon. But, as noted above, proof that a defendant's vehicle rear-ended the plaintiff's vehicle does not, by itself, establish that the jury's failure to find negligence is unsupported by legally or factually sufficient evidence. *See, e.g.*, *Gaskey*, 2009 WL 7047692, at \*1-4 (legally and factually sufficient evidence supported jury's verdict of no negligence in rear-end collision case).

9

Alexander also contends that the evidence of Salomon's negligence was "clear and uncontroverted." As support, Alexander first points to Salomon's testimony that the accident was preventable had Salomon used proper safety techniques. But Salomon also testified that he was not speeding or in a hurry, that he was not following too closely, and that he was not distracted or talking on his cell phone when the accident occurred. He stated that the car in front of Alexander's car stopped suddenly and unexpectedly when he looked away briefly to check his blind spot for oncoming traffic, and that he consequently was unable to avoid rear-ending Alexander's vehicle. Moreover, Alexander confirmed that she was forced to stop when the vehicle in front of her unexpectedly stopped. She also denied any knowledge of what Salomon was doing at the time of the accident; thus she could not testify that Salomon was speeding, talking on his cell phone, or following too closely. Taken as a whole, we cannot say that Salomon's statements cited by Alexander established his negligence conclusively or that evidence of his negligence was "uncontroverted." *See id.* at \*2-3 (driver's statements that he was following too closely and was probably "jointly at fault" for rear-ending a bus were "quasi-admissions," which constituted "merely some evidence" and were "not conclusive upon the admitter").

Alexander additionally points to the fact that Halliburton disciplined Solomon by suspending him for three days without pay following the accident. But the actions taken by Salomon's employer after the accident do not establish that this accident resulted from Salomon's negligence; he was not, for instance, disciplined for talking on his cell phone while driving, which would have violated Halliburton's company policy prohibiting such acts. The discipline form describes the accident as follows: "On January 6, 2015, while on his way to location in a company vehicle, Mr. Salomon was preparing to merge onto the highway, while checking for oncoming

traffic and hit a vehicle from behind with a member of public." Even assuming this report constitutes some evidence that Salomon was at fault for this accident, it is not conclusive so as to remove the negligence determination from the fact-finder. Nor does Halliburton's report, or the fact of Salomon's post-accident discipline, overwhelmingly outweigh the jury's no-negligence finding.

Alexander identifies testimony by one of Salomon's supervisors at Halliburton, who agreed with Alexander's trial counsel that "Salomon was following too closely to [Alexander's vehicle] and didn't give himself enough time to stop." But Salomon's supervisor conceded that he assumed that Salomon was following too closely from the fact that Salomon rear-ended Alexander. As explained above, proof that one vehicle rear-ended another does not, by itself, establish negligence. *See id.* at *1-4.

Alexander cites testimony from her expert, Michael K. Napier, that Salomon failed to keep a proper visual lookout, failed to identify a potential hazard, and was distracted by talking on his cell phone at the time of the accident, all of which contributed to this accident. But Napier did not personally see the accident; thus, he could not offer any specific testimony concerning Salomon's lookout, speed, or following distance. He merely offered his opinion based on Alexander's version of the facts, which the jury could have reasonably disregarded. Further, Napier agreed that, when merging or switching lanes, drivers must be mindful of the traffic in front of them, as well as looking behind them. Though Napier faulted Salomon for talking on his cell phone at the time of the accident, both Salomon and the person to whom he made the call, his supervisor at Halliburton, stated unequivocally that Salomon called the supervisor *after* the accident. Alexander offered expert testimony concerning the time of Salomon's call to his supervisor and the time of Alexander's 911 call, but this evidence did not conclusively establish the time the accident

11

occurred.  And Napier agreed that if the jury were to conclude that Salomon was not using his cell phone at the time of the accident, his opinions faulting Salomon for distracted driving due to cell phone usage should be disregarded.

Finally, Alexander asserts that the police report "places fault for the wreck solely on Salomon for failing to control his speed."  As noted above, Officer Green noted Salomon's "fail[ure] to control speed" and indicated that Green believed that Salomon's conduct was a contributing factor to the accident in his report.  But Green did not make any specific determinations regarding Salomon's speed or following distance in his report, nor did he issue a citation to Salomon.

In sum, instead of "uncontroverted" or overwhelming evidence of Salomon's negligence, our review of the record indicates that the jury was faced with conflicting evidence.  The jury, as the sole judge of the credibility of the witnesses and the weight to be give their testimony, was entitled to believe the testimony demonstrating that Salomon was not negligent and disbelieve Alexander's expert and fact testimony to the contrary.  Thus, the jury's verdict is supported by legally sufficient evidence.  The jury's verdict is also not against the great weight and preponderance of the evidence. *See, e.g.*, *In re Ybarra*, No. 04-17-00245-CV, 2017 WL 4655347, at *3-4 (Tex. App.—San Antonio Oct. 18, 2017, orig. proceeding) (mem. op.) (holding that trial court abused its discretion in granting motion for new trial where jury was presented with conflicting evidence concerning rear-end accident; defendant's statements that he was responsible for accident were not admission of negligence and defendant testified that the reason he did not see vehicle he rear-ended because sun momentarily blinded him); *Arn*, 2010 WL 4378395, at *1-4 (legally and factually sufficient evidence supported jury's finding that driver was not negligent in rear-ending car in front of her as the two attempted to merge onto highway; driver acted with ordinary prudence when she looked over her

12

shoulder to check for oncoming traffic, and when she looked back the car in front of her had unexpectedly come to a stop and she was unable to avoid a rear-end collision); *Gaskey*, 2009 WL 7047692, at *3-5 (jury's finding of no negligence supported by sufficient evidence despite investigating officer's determination that cause of rear-end collision was following driver's failure to control speed and driver's testimony that he was partially at fault; driver also testified that (1) he was not following too closely and was driving well below speed limit, (2) he believed vehicle in front of him was going to proceed through a yellow light at intersection, and (3) vehicle in front came to sudden and unexpected stop).

Because legally and factually sufficient evidence supports the jury's verdict, the trial court did not err in denying Alexander's motion for JNOV or his motion for new trial. Accordingly, we overrule Alexander's second issue.

## Conclusion

Having overruled both of Alexander's appellate issues, we affirm the trial court's judgment.


/s/     Kevin Jewell
          Justice


Panel consists of Justices Busby, Brown, and Jewell.