**Affirmed and Opinion Filed June 28, 2022**



In The

# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-20-00531-CV

## KALAPANA YEDLAPALLI, INDIVIDUALLY AND AS NEXT FRIEND OF SRIVA YEDLAPALLI, AND KALYANI KANCHARIA, Appellants[1]
## V.
## MAHALAKSHMI JALDU, Appellee

### On Appeal from the 417th Judicial District Court
### Collin County, Texas
### Trial Court Cause No. 417-02746-2017

## MEMORANDUM OPINION

Before Justices Myers, Partida-Kipness, and Carlyle
Opinion by Justice Partida-Kipness

Appellant Kalapana Yedlapalli, individually and as next friend of Sriva Yedlapalli, and appellant Kalyani Kancharia appeal the trial court's take-nothing judgment, rendered on a jury verdict, on their negligence claims arising from an automobile collision. In two issues, appellants contend (1) the trial court erred by denying their directed verdict, and (2) the jury's answer of "no" to the liability question was against the great weight and preponderance of the evidence. We affirm.

---

[1] Throughout the record, the parties and the trial court inconsistently spell Appellants' names. In this proceeding, we will use the spellings of the names as they appear in the trial court's judgment.

# BACKGROUND

On December 1, 2015, Kalapana Yedlapalli picked up her daughter and a neighbor's daughter from school in her minivan. Her sister, Kalyani Kancharia, and Kancharia's young son were in the car too. Yedlapalli was driving, Kancharia was in the passenger seat, and the children were in the middle row of the minivan. After leaving the carpool line, Yedlapalli made her way out of the neighborhood. While stopped at a stop sign behind another vehicle, a minivan driven by appellee Mahalakshmi Jaldu rear-ended Yedlapalli's car.

The women dispute how the accident happened. At trial, Yedlapalli explained that the vehicle in front of her was stopped at the stop sign because children were crossing the street, and the school crossing guard had stopped traffic. According to Yedlapalli, she was looking in her rearview mirror to see and talk to the children in the back seat when she saw Jaldu's vehicle coming toward her and not slowing down. Yedlapalli testified she saw Jaldu clearly and saw a cell phone in Jaldu's hand before the collision. Yedlapalli told the jury that she "immediately felt a sharp pain in her neck" and her neck "was like a jolt" when Jaldu's minivan collided with her minivan. Yedlapalli's daughter "complained about something in her shoulder because she hit her shoulder" on the car seat where Kancharia's son was seated. Yedlapalli and Kancharia checked on the children and found no scratches or bruises on them. When Yedlapalli got out of the minivan to speak with Jaldu, her daughter also got out. But Yedlapalli got her daughter back into the vehicle and then spoke

with Jaldu. Yedlapalli testified that Jaldu apologized, asked if she and the kids were hurt, and "was also tensed about what happened." Yedlapalli maintained she told Jaldu that she had "a sharp pain" in her neck, but "that was it."

Jaldu, in contrast, asserted that she was at a full stop at the stop sign before the accident. Jaldu testified that two vehicles were in front of her vehicle at the stop sign, and both vehicles were stopped. Contrary to Yedlapalli's account, Jaldu told the jury there were no children crossing the street and the crossing guard was sitting down on the side of the road. According to Jaldu, she was stopped behind Yedlapalli "just [a] few seconds" before the crash. While she was stopped with her foot on the brake, she saw a piece of paper on the floor between her seat and the passenger seat. Jaldu testified she kept her left hand on the steering wheel and then bent down to pick the paper up. As she bent down, her foot slipped off the brake and her vehicle rolled into and tapped Yedlapalli's vehicle. Jaldu told the jury that her foot was on the brake right before the accident and her foot did not hit the gas. Neither Jaldu nor her daughter were injured. After the collision, Jaldu got out of her minivan, helped Yedlapalli get her daughter back in their vehicle, and spoke with Yedlapalli and Kancharia. Jaldu maintained that Yedlapalli and Kancharia told her they "were fine" and no one in their car was injured.

The women both testified that the crossing guard checked on them and everyone agreed there was no need to call the police. Jaldu recalled the crossing

guard telling the women that they did not need to call the police "because it was a minor accident." The women exchanged contact information and left the scene.

Yedlapalli and Kancharia filed suit against Jaldu on June 14, 2017, asserting negligence. A jury trial was held in February 2020. On cross-examination, appellants' counsel asked Jaldu if she was "taking one hundred percent responsibility for the crash on December 1st, 2015." Jaldu agreed that her vehicle hit Yedlapalli's vehicle when her foot slipped from the brake and the car rolled. She further testified that she remembered telling Yedlapalli at the scene that it was her "mistake," and she understands being responsible for the damage to the car. But Jaldu refused to take responsibility for appellants' purported injuries because "everybody was completely fine" right after the accident. Jaldu told the jury she thinks it is "very fishy" that appellants only sued after they went to doctors and chiropractors and did not pay the medical bills.

At the conclusion of the evidence, appellants moved for directed verdict on liability based on what they categorized as Jaldu taking one hundred percent responsibility for the accident. The trial court denied the motion for directed verdict. The court charged the jury, the parties presented closing arguments, and the jury retired to deliberate. The jury answered "no" to whether the negligence, if any, of Jaldu proximately caused the occurrence in question. The trial court signed a take nothing judgment in accordance with the verdict. Appellants filed a motion for new trial, which was overruled by operation of law, and this appeal followed.

## STANDARDS OF REVIEW

In their first issue, appellants challenge the trial court's denial of their motion for directed verdict. The standard of review for a ruling on a motion for directed verdict is a legal sufficiency or "no evidence" standard of review. *L.G. Ins. Mgmt. Servs., L.P. v. Leick*, 378 S.W.3d 632, 642 (Tex. App.—Dallas 2012, pet. denied). In reviewing the legal sufficiency of the evidence, we must determine whether the nonmovant produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented. *Id.* In such a review, an appellate court considers all the evidence in a light most favorable to the nonmovant and resolves all reasonable inferences that arise from the evidence admitted at the trial in the nonmovant's favor. *See King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003).

In their second issue, appellants complain the evidence was factually insufficient to support the jury's finding that Jaldu's negligence, if any, did not proximately cause the occurrence in question. To establish a lack of factually sufficient evidence, appellants must demonstrate the finding is against the great weight and preponderance of the evidence presented at trial. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (party attacking factual sufficiency of evidence supporting adverse finding on which it had burden of proof must demonstrate that finding is against great weight and preponderance of evidence). "The court of appeals must consider and weigh all of the evidence, and can set aside

a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *Id.* "Jurors are the sole judges of the credibility of the witnesses and the weight to give their testimony." *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). Jurors "may choose to believe one witness and disbelieve another." *Id.* As it is the jurors' role to resolve conflicts in the evidence, our review assumes that they did so in a manner consistent with their verdict. *Id.* at 820; *Capcor at KirbyMain, L.L.C. v. Moody Nat'l Kirby Houston S, L.L.C.*, 509 S.W.3d 379, 384–85 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

## APPLICABLE LAW

To prevail on their negligence cause of action against Jaldu, appellants had to establish the existence of a duty, a breach of that duty, and damages proximately caused by the breach. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). To establish breach of duty, the plaintiff must show either that the defendant did something an ordinarily prudent person exercising ordinary care would not have done under the particular circumstances or that the defendant failed to do something that an ordinarily prudent person would have done in the exercise of ordinary care. *Douglas v. Aguilar*, 599 S.W.3d 105, 108 (Tex. App.—Houston [14th Dist.] 2020, no pet.).

"The occurrence of an accident or a collision is not of itself evidence of negligence." *Smith v. Cent. Freight Lines, Inc.*, 774 S.W.2d 411, 412 (Tex. App.—

Houston [14th Dist.] 1989, writ denied). Proof that the defendant's vehicle rear-ended the plaintiff's vehicle does not establish negligence as a matter of law. *Id.* Rather, the plaintiff must prove that the defendant's specific acts were negligent, and that they proximately caused the plaintiff's damages. *Id.*

## ANALYSIS

Appellants bring two issues on appeal. First, they contend the trial court erred by denying their motion for directed verdict. Second, they assert the evidence was factually insufficient to support the jury's finding that Jaldu's conduct was not negligent and did not proximately cause the occurrence in question. We address each issue in turn.

## I.      Denial of directed verdict

At the close of evidence, appellants' counsel moved for directed verdict, arguing as follows:

> The only thing I would say, now that the defendant has accepted a hundred percent responsibility for the crash, that the plaintiff's [sic] move for a directed verdict on liability.

In response, Jaldu's counsel maintained the issue of liability should be an issue put to the jury. The trial court denied the motion.

Appellants based their directed-verdict argument on the following exchange during the cross-examination of Jaldu:

> Q.  I'm am [sic] asking you, Mrs. Jaldu, if you are taking one hundred percent responsibility for the crash on December 1st, 2015?

A.  I would not say crash, definitely my foot rolled off -- moved -- slipped from the brake when I was bending to pick up the sheet which was in the middle of the seat --

Q.  Let me --

A.  -- the car; it rolled and tapped in front of the vehicle.  You can see from the picture which the plaintiff showed.

. . . .

Q.  Are you taking one hundred percent responsibility for the incident on 12/1/2015, where your minivan ran into the back of my client's minivan?

A.  Yeah.  It went and hit and I remember getting down and telling her it was my mistake.  When I was picking up the sheet, my foot slipped from the back -- the brakes, and it hit your vehicle, yes.

Q.  So that's a yes you're taking one hundred percent responsibility?

A.  For that sentence, like I said, for that, yes.

Q.  Okay. Do you feel, since you've taken responsibility for the incident, that you should be responsible for the damages you caused to the plaintiffs?

A.  For the car, I understand, but the plaintiff going to chiropractor the third day when she said that nothing hurt her -- she was, everybody was completely fine, that seems very fishy to me.

Q.  So is that a no?

A.  So I cannot take responsibility for the injuries caused later for them in 2016 or '17, when I heard about that they were suing me.  Until then I did not know that this all -- this had happened. So they went and shopped for a chiropractor, doctor, whatever, whom they haven't even paid.

When I go to doctors, if I don't pay them, they send me notice because -- because if I don't pay, the credit score goes down or the collection -- whomever collects, they send a notice that, you know, you haven't paid.  I don't understand after five years they haven't paid. Who is sending them?  I don't understand.

How -- how are they sure that 2015, from then -- 2020, somebody is going to pay them? If it is family, I understand. Friends I, understand.

I don't think so they are friends or family, I feel they have a motive behind it, and they have a plan I -- I believe that.

On appeal, appellants reurge their position that the question of negligence should not have gone to the jury because Jaldu assumed one hundred percent responsibility for the accident. We disagree.

Jaldu's statements acknowledging that her foot slid off of the brake and her vehicle then hit Yedlapalli's vehicle are not conclusive evidence that she breached the duty of ordinary care. *See*, *e.g.*, *Jowdy v. Rossi*, No. 01-19-00715-CV, 2021 WL 2793474, at *4 (Tex. App.—Houston [1st Dist.] July 6, 2021, no pet.) (mem. op.) ("Rossi's admission that she was responsible for the crash because she was driving is an admission that she struck Jowdy's vehicle, but it is not an admission of negligence."); *see also In re Ybarra*, No. 04-17-00245-CV, 2017 WL 4655347, *4 (Tex. App.—San Antonio Oct. 18, 2017, orig. proceeding) (mem. op.) (holding that defendant's "testimony and pre-trial statements that he was responsible for the accident do not constitute an admission of negligence"); *see Benavente v. Granger*, 312 S.W.3d 745, 749–50 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (defendant's testimony that he ran into plaintiff's car did not establish negligence as a matter of law).

Moreover, when a driver shows "some care," then the question of negligence is a question of fact for the jury even if the driver does not deny the accident was her

fault. *Douglas*, 599 S.W.3d at 108; *Cnty. of Dallas v. Poston*, 104 S.W.3d 719, 723 (Tex. App.—Dallas 2003, no pet.) ("when the driver exercises some degree of care, it becomes an issue of fact as to whether the driver's conduct was negligent."). In such cases, the trial court does not err by denying a directed verdict. *Douglas*, 599 S.W.3d at 108, 109.

The *Douglas* opinion is instructive. In that case, Douglas was driving on the highway when she tried to change from the left lane to the right lane. *Douglas*, 599 S.W.3d at 107. She checked her rearview mirror and both side mirrors, activated her turn signal, and began to move lanes. *Id.* Douglas did not see another vehicle when she checked her mirrors. *Id.* When Douglas started to move lanes, she hit the car next to her, which was driven by Aguilar. *Id.*

Aguilar sued Douglas and moved for directed verdict at trial based on Douglas's testimony that she did not dispute her responsibility for the accident. *Id.* at 108. Douglas did, however, maintain that she used ordinary care by checking her mirrors and that Aguilar was not in the lane when she did so. *Id.* at 109. The trial court granted Aquilar's motion for directed verdict and entered "Yes" as the answer to the jury charge's negligence question. *Id.* at 108. The court of appeals reversed, holding that a directed verdict was not proper because there was some evidence "that Douglas did what a person of ordinary prudence would have done under the same or similar circumstances. " *Id.* at 109. Further, "the jury could have reasonably believed that despite Douglas's acceptance of responsibility she drove in a reasonable manner

and did not act negligently" or that she did not drive responsibly and was negligent in failing to yield the right-of-way. *Id.* at 109. Under those facts, her negligence was a question of fact for the jury and not proven as a matter of law. *Id.* at 110.

We find this analysis equally applicable here. Jaldu's acceptance of responsibility, standing alone, did not establish her negligence as a matter of law. *See*, e.g., *Douglas*, 599 S.W.3d at 110; *see also Jowdy*, 2021 WL 2793474, at \*4; *In re Ybarra*, 2017 WL 4655347, \*4. Moreover, Jaldu contested liability by filing a general denial and maintained throughout trial her lack of liability for appellants' alleged personal injuries and accompanying damages *See Estrada v. Dillon*, 44 S.W.3d 558, 562 (Tex. 2001) (if a party files a general denial in the trial court, that pleading puts a plaintiff to his or her proof on all issues, including liability.). Jaldu testified that when she reached down to pick up the paper, she was at a complete stop a safe distance behind Yedlapalli with her foot on the brake. That testimony provided some evidence that Jaldu did what a person of ordinary prudence would have done under the same or similar circumstances. Under these facts, the question of negligence was one for the jury and was not established as a matter of law. *See Douglas*, 599 S.W.3d at 110.

Appellants urge this Court against following *Douglas*, arguing that it was wrongly decided and conflicts with the Fourteenth Court's prior opinion in *Ginn v. Pierce*, 595 S.W.3d 762 (Tex. App.—Houston [14th Dist.] 2019, pet. denied). This

–11–

assertion is unavailing because we find *Douglas* persuasive and *Ginn* distinguishable from *Douglas* and the case at bar.

In *Ginn*, the parties came to a stop on a road that was blocked by an accident. 595 S.W.3d at 765. Pierce stopped in front of Ginn, "but after one minute decided he did not want to wait for the traffic jam to clear," put his car in reverse, and backed into Ginn's car. *Id.* at 767. Ginn sued Pierce for negligence. *Id.* at 765. At trial, Ginn testified that he was parked a car's length behind Pierce and honked as soon as Pierce began reversing. *Id.* at 767. Ginn stated that Pierce told him after the accident that Pierce had not looked in his mirrors. *Id.* Pierce insisted at trial, however, that he checked his mirrors before reversing and Ginn's vehicle must have been in his blind spot. *Id.* Ginn moved for directed verdict, and the trial court denied the motion. *Id.* at 765. The jury found Pierce was not negligent. *Id.*

On appeal, the appellate court held that the trial court erred by denying the motion for directed verdict because "no reasonable factfinder could find that Pierce would not have seen Ginn's vehicle if Pierce had used ordinary care in looking in his rear-view mirror." *Ginn*, 595 S.W.3d at 767–68. The court concluded "that the trial evidence proved as a matter of law that (1) Pierce failed to use ordinary care in backing up his truck; (2) if Pierce had used ordinary care, he would have seen Ginn's stationary vehicle and been able to avoid a collision with the vehicle; and (3) Pierce's negligence proximately caused the accident." *Id.*

Our facts are distinguishable from those in *Ginn* because Jaldu, unlike Pierce, did not make a conscious decision to move her car. Jaldu testified that she left her foot on the brake when she reached for the paper but her foot slipped off the brake unintentionally. Unlike Pierce, Jaldu took steps to remain at a complete stop. We conclude that this testimony constituted at least a scintilla of evidence that raised a fact question for the jury and did not establish her negligence as a matter of law. *See, e.g.*, *Douglas*, 599 S.W.3d at 109–110 (directed verdict not proper because there was some evidence "that Douglas did what a person of ordinary prudence would have done under the same or similar circumstances"); *see also Schwartz v. Forest Pharm., Inc.*, 127 S.W.3d 118, 121–22 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (driver's testimony that her foot accidently slipped off of the brake after she dropped a cold drink in her lap was factually sufficient to support finding that driver was not negligent).

Appellants further argue that a directed verdict was required here because Jaldu did not assert an affirmative defense or otherwise claim that Yedlapalli was at fault for the accident. But Jaldu was not required to assert an affirmative defense of contributory negligence to deny that she was negligent. *See Douglas*, 599 S.W.3d at 110 (citing *Davis v. Manning*, 847 S.W.2d 446, 449 (Tex. App.—Houston [14th Dist.] 1993, no writ) ("lack of negligence" is not an affirmative defense)). Jaldu's statements conceding some responsibility did not entitle appellants to a finding of negligence as a matter of law. And, as discussed above, the record includes evidence

–13–

from which a jury could reasonably determine Jaldu was not negligent. The trial court, therefore, did not err by denying the motion for directed verdict. We overrule appellants' first issue.

## II. Sufficiency of the evidence to support finding of no negligence

In their second issue, appellants contend the evidence is factually insufficient to support the jury's answer to Question No. 1 of the jury charge, which asked whether "the negligence, if any, of [Jaldu] proximately cause the occurrence in question?" The jury answered "no." To establish a lack of factually sufficient evidence to support that finding, appellants must demonstrate the finding is against the great weight and preponderance of the evidence presented at trial. *See Dow Chem. Co.*, 46 S.W.3d at 242. We conclude appellants have failed to do so.

Proof that a defendant's vehicle rear-ended the plaintiff's vehicle does not, by itself, establish that the jury's failure to find negligence is unsupported by factually sufficient evidence. *E.g., Schwartz*, 127 S.W.3d at 121–22 (affirming jury's finding that driver was not negligent where driver testified she was at a complete stop at a red light when her foot slipped off of the brake after she dropped a cold drink in her lap). "To the contrary, plenty of courts have upheld a jury's 'no' answer on this issue, even in rear-end collision cases when the defendants made quasi-admissions of fault." *Brooks v. Salazar*, No. 14-19-00176-CV, 2020 WL 6737744, at *3 (Tex. App.—Houston [14th Dist.] Nov. 17, 2020, no pet.) (mem. op.) (citing cases); *Jowdy*, 2021 WL 2793474, at *4 ("Rossi's admission that she was responsible for

the crash because she was driving is an admission that she struck Jowdy's vehicle, but it is not an admission of negligence.") (citing cases and noting that this is a jury question).

For example, *Schwartz* involved a rear-end collision similar to the one at issue here. There, as here, the parties disagreed on how the collision occurred. *Schwartz*, 127 S.W.3d at 121–22. The plaintiff, Schwartz, testified that he was stopped at a red light when the driver, Wilson-Woodcox, hit his car while travelling approximately 10 m.p.h. *Id.* at 121. Wilson-Woodcox, in contrast, testified that she was at a stop before the collision and accidently lifted her foot off of the brake pedal when she moved in her seat. *Id.* at 121–22. She told the jury that she jumped when she dropped a cold beverage on her lap, which then caused her foot to come off the brake. *Id.* The jury found the plaintiff suffered no damages proximately caused by the driver. *Id.* at 122. The court of appeals concluded the evidence was factually sufficient to support the finding because the evidence was not so weak nor the finding so against the great weight and preponderance of the evidence that it was clearly wrong and unjust. *Id.* Although Schwartz presented evidence that was inconsistent with the jury's finding, the court reasoned that the jury, as the sole judge of the credibility of the witnesses and the weight to be given their testimony, could resolve conflicts and inconsistencies in the testimony of any one witness as well as the conflicting testimony of different witnesses. *Id.* The court concluded there was more than a

–15–

scintilla of evidence to support the finding that Schwartz did not suffer any injuries proximately caused by Wilson-Woodcox and affirmed the judgment. *Id.*

The same is true in this case. Here, as in *Schwartz*, the parties dispute how the collision occurred. Yedlapalli testified that Jaldu was not stopped before the collision but was, instead, driving toward the stop sign without slowing down while holding her cell phone. Jaldu testified that she was stopped at the stop sign behind Yedlapalli when she reached for a piece of paper and her foot slipped off the brake. The jury was charged with judging the credibility of the witnesses and the weight to give their testimony and was permitted to resolve conflicts and inconsistencies of any witness as well as the conflicting testimony of different witnesses. *Schwartz*, 127 S.W.3d at 122; *Klein v. Brown-Griffin Texaco Distribs., Inc.*, 562 S.W.2d 910, 911 (Tex. Civ. App.—Amarillo 1978, writ ref'd n.r.e.) (in a rear-end collision, "[i]t was uniquely within the jury's province to determine whether plaintiff succeeded in proving negligence by a preponderance of the evidence."). With rear-end collisions, "standards of ordinary care cannot be fixed with any degree of certainty but must be left in large measure to the trier of the facts." *Neese v. Dietz*, 845 S.W.2d 311, 314 (Tex. App.—Houston [1st Dist.] 1992, writ denied) (quoting *Gaitan v. Reyes Salvatierra*, 485 S.W.2d 602, 604 (Tex. Civ. App.—San Antonio 1972, no writ)). "The jury is not only the judge of the facts and circumstances proven, but may also draw reasonable inferences and deductions from the evidence adduced before it." *Id.*

Conflicts in the witnesses' testimony present credibility questions for the jury to resolve. *Id.* at 314–15.

Moreover, as discussed in relation to the denial of appellants' motion for directed verdict, the mere occurrence of a rear-end accident does not establish negligence as a matter of law. *Douglas*, 599 S.W.3d at 109–110; *Cent. Freight Lines*, 774 S.W.2d at 412. "And it is neither impossible nor automatically invalid for a jury to determine that neither driver in a rear-end accident committed negligence." *Gaskey v. One Source Sec. & Found*, No. 14-07-00850-CV, 2009 WL 7047692, at *3 (Tex. App.—Houston [14th Dist.] June 18, 2009, no pet.) (mem. op.); *Brooks*, 2020 WL 6737744, at *3 ("Car accidents can happen without the negligence of any party."). Whether a rear-end collision resulted from negligence depends on all the facts and circumstances of the particular case. *Pearson v. DeBoer, Inc.*, 99 S.W.3d 273, 276 (Tex. App.—Corpus Christi–Edinburg 2003, no pet.) "A rear-end collision may be some evidence of negligence of the rear-ending driver, but it does not constitute conclusive proof." *P.A.M. Transp., Inc. v. Stevens Transp., Inc.*, No. 05-12-01031-CV, 2013 WL 3948880, at *2 (Tex. App.—Dallas July 31, 2013, no pet.) (mem. op.) (internal citations omitted).

In the face of conflicting evidence, the jury may have believed Jaldu and concluded she acted as a reasonably prudent person would have acted in the same or similar circumstance. Or the jury may have simply believed appellants failed to prove by a preponderance of the evidence that either driver was negligent.

Regardless of the jury's reasoning and considering all of the evidence, we hold that the jury's finding of no negligence was not so contrary to the great weight and preponderance of the evidence that it was clearly wrong and unjust. *See Benavente*, 312 S.W.3d at 747, 749–50 (factually sufficient evidence to support the jury's "no" answer regarding negligence of a driver who rear-ended a stopped car although the driver admitted to being distracted by looking at a yellow Lamborghini); *see also Schwartz*, 127 S.W.3d at 122 (driver not negligent for mistakenly removing foot from the brake and causing vehicle to collide with vehicle in front of her).

We therefore conclude the evidence was factually sufficient to support the jury's answer to Question No. 1. We overrule appellants' second issue.

## CONCLUSION

Under this record, we conclude the trial court did not err by denying appellants' motion for directed verdict, and the evidence was factually sufficient to support the jury's answer to the liability question. Accordingly, we overrule appellants' issues and affirm the trial court's judgment.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

200531F.P05

–18–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

KALAPANA YEDLAPALLI,
INDIVIDUALLY AND AS NEXT
FRIEND OF SRIVA YEDLAPALLI,
AND KALYANI KANCHARIA,
Appellant

No. 05-20-00531-CV        V.

MAHALAKSHMI JALDU, Appellee

On Appeal from the 417th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 417-02746-
2017.
Opinion delivered by Justice Partida-
Kipness. Justices Myers and Carlyle
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee MAHALAKSHMI JALDU recover her costs of this appeal from appellants KALAPANA YEDLAPALLI, INDIVIDUALLY AND AS NEXT FRIEND OF SRIVA YEDLAPALLI, AND KALYANI KANCHARIA.

Judgment entered this 28th day of June 2022.